[L. A. No. 29678. In Bank. Jan. 26, 1970.]

ROBERT THORN et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DEFENDERS, INC., Real Party in Interest.

COUNSEL

Robert Thorn, in pro. per., and Kaminar, Sorbo, Andreen, Thorn & Gallagher and Robert E. Andreen for Petitioners.

Brian J. Newman-Crawford for Respondent.

No appearance for Real Party in Interest.

OPINION

BURKE, J.—The Lanterman-Petris-Short Act (the "LPS act" or the "act"), commencing with section 5000 of the Welfare and Institutions Code,[1]

---

[1] All section references are to the Welfare and Institutions Code unless otherwise stated.

constitutes part 1 of a new division 5 added to that code in 1967 (Stats. 1967, ch. 1667, p. 4074, § 36),[2] operative July 1, 1969, and entitled "Community Mental Health Services." This prohibition proceeding presents questions of the construction, practical application, and constitutionality of certain provisions of the act which authorize the detention for intensive treatment, not to exceed 14 days, of involuntary patients who as a result of mental disorder (§ 5150) are a danger to others or to themselves or are gravely disabled as defined by subdivision (h) of section 5008. As will appear, we have concluded that with suitable safeguards to protect the rights of such patients to counsel and to seek release on habeas corpus, the provisions of the act here in issue should be sustained.

The LPS act, as enacted in 1967 after a two-year legislative study, and thereafter amended, repealed the principal provisions for the civil commitment of mentally ill persons found in prior California law and replaced them by a new statutory scheme repealing the indeterminate commitment, removing the legal disabilities previously imposed upon persons adjudicated to be mentally ill, and enacting an extensive scheme of community-based services, emphasizing voluntary treatment and providing for periods of involuntary observation and crisis treatment for persons who are unable to care for themselves or whose condition makes them a danger to themselves or others. (Stats. 1967, ch. 1667; Stats. 1968, chs. 1170, 1199 and 1374; Stats. 1969, ch. 722; see "The Dilemma of Mental Commitments in California: A Background Document," Subcommittee on Mental Health Services, Assembly Interim Committee on Ways and Means (Nov. 1966), hereinafter "Subcommittee Report.")

Petitioner psychiatric foundation owns and operates two hospitals in the County of San Diego which are devoted exclusively to the care and treatment of the acute mentally ill person and which have been designated by the county under the act (§5150) as facilities for the evaluation and treatment of involuntary patients. Real party in interest, Defenders, Inc., is a nonprofit corporation established primarily to provide legal services to indigent persons accused of crimes in the County of San Diego. On about July 25, 1969, respondent superior court ordered the legal staff of Defenders, Inc., to visit all persons being detained in any facilities in the county for the 14-day intensive psychiatric treatment authorized under sections 5250 through 5254 of the act, and also appointed that staff as attorney for such detained persons in order that they might be fully apprised of their legal rights, including the right to a writ of habeas corpus should they wish to leave the facility in which detained. Respondent court also informed petitioner that if petitioner's hospitals would not admit the

---

[2]Former division 5 was repealed concurrently, and its subject matter reenacted as new division 4, commencing with section 4000. (Stats. 1967, ch. 1667, p. 4055, § 35.)

attorneys from Defenders, Inc., to visit all 14-day intensive treatment patients being held under sections 5250 through 5254,[3] the court would issue automatically a writ of habeas corpus to have all such persons being treated in petitioner's hospitals brought before the court. On August 4, 1969, respondent court made a continuing order to the same effect. Petitioner then instituted this prohibition proceeding seeking to nullify the court's orders. We issued the alternative writ.

As stated, it is the detention for involuntary intensive treatment of patients who by reason of asserted mental disorder are claimed to be dangerous or gravely disabled, with which this proceeding is concerned. Section 5150 of the act declares that "When any person is a *danger* to others, or to himself, or *gravely disabled* as a result of *mental disorder,* a peace officer, member of the attending staff . . . of an evaluation facility designated by the county, or other professional person designated by the county may, upon *reasonable cause,* take . . . the person into custody and place him in a facility designated by the county and approved by the State Department of Mental Hygiene as a facility for 72-hour treatment and evaluation. . . ." (Italics added.)[4]

The act does not define the terms "danger," "mental disorder," or "reasonable cause." In section 5008 it does define "evaluation," and "gravely disabled." So far as here pertinent, "gravely disabled" is defined as "a condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter. . . . [T]he term does not include mentally retarded persons . . . ." (§ 5008, subd. (h).)

Section 5250 provides in pertinent part that after receiving an evaluation during the 72-hour detention period, the patient "may be certified for not more than *14 days* of *involuntary intensive treatment* under the following conditions:

"(a) The professional staff of the . . . facility . . . has found the person is, as a result of mental disorder . . ." dangerous or gravely disabled.

"(b) The person has been advised of, but *has not accepted voluntary treatment.*" (Italics added.)

Section 5251 specifies that for a person to be so certified a notice of certification must be signed by certain authorized physicians and medical

---

[3]As hereinafter appears, any patient being so held must first have refused voluntary treatment. (§ 5250, subd. (b).)

[4]Under other sections of the act a 72-hour detention of such a person for evaluation and treatment may also be ordered by the superior court upon a verified petition. (§§ 5200-5213.)

or social worker personnel. Section 5252 sets out the form of the notice of certification, which is to be directed to the superior court of the particular county, and is to include, inter alia: an allegation that the person certified is, as a result of mental disorder, dangerous or gravely disabled; a statement that such person "has been informed of this evaluation, and has been advised of, but has *not* been *able or willing to accept" voluntary treatment,* and is therefore certified "to receive *intensive treatment for no more than 14 days."* (Italics added.) The notice is to conclude with a declaration that a *copy* thereof "has been *delivered* this day *to* the *above-named person and* that *he has been informed of* his legal *right to* a judicial review by *habeas corpus, and this term* has been *explained* to him *and* that he has been *informed of* his *right to counsel, including court-appointed counsel* pursuant to Section 5276 . . . ." (Italics added.)

Section 5252.1 directs that the person delivering the notice of certification to the person certified shall at the time of delivery inform the latter of his right to judicial review by habeas corpus and shall explain that term to him, and also inform him of his right to counsel, including court-appointed counsel. The requirement of sections 5252 and 5252.1 that the certified person be informed of his right to counsel was added to the act by 1969 amendment. (Stats. 1969, ch. 722.)

Section 5253 requires that in addition to personal delivery of the certification notice to the person certified, a copy of the notice shall be filed with the court and also sent to the person's attorney (if any), to the district attorney, to the public defender (if any), to the facility providing intensive treatment, and to the State Department of Mental Hygiene. If the person certified is capable of designating a person whom he wishes informed regarding his certification, he is to be asked to do so; otherwise he is to be asked to make the designation as soon as he is capable.

Section 5254 declares that certification shall terminate before the 14-day maximum period if in the opinion of the professional person in charge of the facility the patient has improved sufficiently for him to leave, or he is prepared to accept voluntary treatment.[5]

Judicial review of intensive treatment certifications is dealt with in sections 5275 through 5278. In pertinent part section 5275 provides that one detained by certification "shall have a right to a hearing by . . .

[5]Sections 5260-5268 authorize, however, certification for an *additional 14 days,* upon a second certification notice, of *suicidal persons.*

Also, sections 5300-5306 authorize confinement for an additional 90 days for further treatment, upon petition and court order after the 14-day intensive treatment period has expired, of patients who have threatened, attempted or inflicted physical harm to others and who, as a result of mental disorder, present an imminent threat of substantial physical harm to others.

habeas corpus for his release after he or any person acting on his behalf has made a request for release to either (a) the person delivering the [certification notice] . . . to the person certified at the time of such delivery, or (b) to any member of the treatment staff of the facility . . . at anytime during the 14 days of intensive treatment." The person to whom the request for release is made is required to promptly provide the certified person with a written release request form to sign, and to then deliver the completed form to the professional person in charge of the facility; as soon as possible the latter "shall inform the superior court . . . of the request for release." Intentional violation of section 5275 is declared to be a misdemeanor.

Section 5276 directs that judicial review is to be in the superior court; that both the treatment staff and the court shall inform the certified person of his right to counsel and if he so elects the court "shall immediately appoint the public defender or other attorney to assist" and represent him; that the court shall grant habeas corpus "or order an evidentiary hearing within two judicial days after the petition is filed." If the court finds (a) that the certified person is not dangerous or gravely disabled as the result of mental disorder, or (b) that he had not been advised of, or had accepted, voluntary treatment, or (c) that the facility is not suitably equipped or staffed or is not designated by the county to provide intensive treatment, "he shall be released immediately."

The act (§§ 5325, 5327) also declares that during involuntary detention the person detained shall have certain listed rights, and shall retain all rights not specifically denied him under the act. Among those expressly specified are the right to see visitors each day, the right to refuse shock treatment and the right to refuse lobotomy. (§ 5325, subds. (c), (f), (g).) However, section 5326 provides that such rights may be denied for good cause by "the professional person in charge of the facility or his designee"; the denial is to be entered in the patient's treatment record and information pertaining thereto is to be made available, on request, to various specified persons, including the person, his attorney, or his guardian.

As stated, respondent court appointed the legal staff of Defenders, Inc., as attorneys for all persons being detained in any facilities in the county under sections 5250 through 5254, for 14-day intensive treatment, and made its order that unless petitioner admitted such attorneys to visit all persons being so detained in petitioner's hospitals, the court would issue automatically a writ of habeas corpus to have all such persons brought before the court.[6]

---

[6]It appears that petitioner's hospitals came to the attention of respondent court thusly: After the court had appointed the legal staff of Defenders, Inc., as attorneys

The court's reasoning was that inasmuch as a patient must first be asked and refuse voluntary treatment before certification is authorized for the involuntary 14-day intensive treatment (§ 5250), all such certifications demonstrate and are based upon the patient's refusal to accept voluntary treatment and such refusal is tantamount to a demand for release from the facility, thereby bringing into play the provisions of section 5275 which entitle a patient requesting release to a hearing on habeas corpus. The court noted its obligation under sections 5275 and 5276, when the fact of a release request is brought to its attention,[7] to investigate and appoint an attorney if necessary and either issue habeas corpus peremptorily or in the alternative have a prompt evidentiary hearing. The court also commented on the provision of section 5275 for the patient to sign or affix his mark to a written form requesting release, pointed out that often a paranoid person will absolutely refuse to affix his signature or "X" to any piece of paper and that for his right to habeas corpus to depend upon a writing so signed by him could amount to depriving him of it altogether, and related that on a recent occasion the matter of an 87-year-old psychotic who had repeatedly demanded to be released had failed to reach the court as it should because of the patient's refusal to sign a piece of paper. We are persuaded that respondent court's approach is sound and should be sustained at this stage of what petitioner concedes is experimental legislation in the field of the care and treatment of the mentally ill.

In attacking the orders of respondent court petitioner urges that the court lacks authority to appoint counsel for a certified patient who has not specifically requested counsel; that each patient has the right to choose his own counsel; that visitations by appointed counsel not specifically requested by the patient can disturb and irreparably damage the patient; that section 5326 of the act authorizes the patient's physician for medical necessity to limit the rights of visitation, and while this authority does not extend to visits by counsel requested by the patient, it should apply to counsel

---

for all persons being detained under certification for 14-day intensive treatment, and ordered that staff to visit all such persons, so that they might be fullly apprised of their legal rights, petitioner refused to admit attorneys from Defenders, Inc., to visit one Mrs. Green, who had been certified on July 19, 1969, with a diagnosis of paranoid schizophrenia. The court thereupon, on July 31, 1969, issued a writ of habeas corpus, on which hearing was continued to August 4. Mrs. Green was then discharged by petitioner "on or about August 1, 1969," near the end of the 14-day certification period, and when the matter was called on August 4 it was taken off calendar. The court then notified petitioner that it would automatically issue habeas corpus with respect to all persons detained under certification if petitioner refused admission to the attorneys appointed by the court. Petitioner alleges that the denial of visitation in the Green case was based on the fact that Mrs. Green had been fully advised of her legal rights, including the right to have counsel and to habeas corpus, but did not want legal counsel and did not at any time request release.

[7]As noted, the 14-day certification notice is to be directed to and a copy thereof filed with the superior court. (§§ 5252, 5253.)

appointed without such a request; that bringing a patient before the court on habeas corpus when he has not requested such a hearing or has not requested discharge from the facility could likewise interfere with the well being of the patient; that all patients at petitioner's hospital are read a statement setting forth fully their rights to legal counsel at any time and their rights to seek habeas corpus, but many of such patients have expressly stated they do not wish such counsel and do not wish to leave the facility.

It is also petitioner's position that the provision of section 5275 for a written release request to be signed by a certified patient requesting release is directory rather than mandatory, and that upon receipt by any member of the treatment staff of a release request, whether or not in writing, the superior court must be promptly notified thereof and of the patient's wish for judicial review by habeas corpus and for appointment of an attorney. (§ 5276.) However, petitioner contends that lacking such a specific request from the patient, the trial court is not empowered to act.

The briefs have argued extensively the concepts of due process, of the right to counsel, and of the right to notice and a hearing on the part of one who is being detained under certification for intensive treatment. As stated in *Sokol* v. *Public Utilities Com.* (1966) 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265], "What is due process depends on circumstances. It varies with the subject matter and the necessities of the situation. [Citation.] Its content is a function of many variables, including the nature of the right affected, the degree of danger caused by the proscribed condition or activity, and the availability of prompt remedial measures."

It cannot be disputed that the treatment and possible necessary confinement of the mentally ill presents many special and ofttimes difficult problems. However, in our view the construction placed by respondent court on the sections of the act now before us which provide for the right of the patient detained under certification for involuntary intensive treatment to representation by counsel and to seek release upon habeas corpus appears to accord not only with the intent of the Legislature but extends protection to the patient's rights to due process, to counsel, to notice, and to a hearing if desired.

The Subcommittee Report, *supra,* at pages 6-7, notes that a review of recent legislative actions throughout the nation with respect to mental health services "illustrates the tendency to make the process either more medical, as in New York, or to increase legal protections, as in the District of Columbia. This has tended to place state legislatures in the uncomfortable position of having to choose between the medical objectives of treating sick people without legal delays and the equally valid legal aim of

insuring that persons are not deprived of their liberties without due process of law." (Footnotes omitted.)

█ Although the LPS act authorizes a process somewhat more medical than the former civil commitment procedures which it repealed, nevertheless the provisions of the act requiring notice of the 14-day certification for involuntary intensive treatment to be given to the superior court, and to various attorneys, among others (§ 5253), and the express specification of the rights of a patient who requests release to have counsel appointed and to seek habeas corpus (§§ 5275, 5276), demonstrate the concern of the Legislature that the patient's rights receive full protection at all times.

More narrowly, in the context of this case, the question is presented of the nature and the adequacy of notice to the patient of the fact both of his certification and of his right to challenge it; as well as the question of the manner in which the patient undertakes to exercise such right.

The act expressly directs that the person delivering the notice of certification to the patient concurrently inform the patient "of his legal right to a judicial review by habeas corpus, and shall explain the term to him, and shall inform [him] of his right to counsel, including court-appointed counsel . . . ." (§ 5252.1; § 5252.) Additionally, if the patient requests release at any time during the 14-day treatment period the treatment staff member receiving the request must promptly relay it to the superior court. (§ 5275.)

However, it is because the patient is allegedly dangerous or gravely disabled by reason of alleged mental disorder and has refused voluntary treatment therefor that he is subject to the involuntary certification. The problem thus arises of the capacity of a patient in such a condition to comprehend the nature of the notice of certification and of the rights to counsel and to habeas corpus which the act declares he may exercise with respect thereto, as required to be explained to him by the nonlegal staff of the treatment facility. As recognized by the act, the patient may not be capable of even designating persons whom he wishes informed regarding his certification; section 5276 directs that if not so capable at the time of receiving notice of certification, the patient shall be asked to make such a designation "as soon as he is capable." Moreover, as noted by amicus curiae in the companion case of *County of San Diego* v. *Superior Court (and Callahan),*[8] it seems fair to presume that certification is most

---

[8] A quite helpful amicus brief has been submitted by the Citizens Advisory Council, created by section 5763, to which we are indebted for much of the discussion which follows. That council is a group of 15 citizens, including professional persons in the area of mental health, who were appointed by the Governor of California, the President of the Senate Rules Committee and the Speaker of the Assembly. The role of the council is to provide an independent review of and perspective on the quality of mental health services in this state.

unlikely in the absence of fairly apparent emotional distress. Additionally, it is likely that many certified persons will be undergoing treatment with sedating and tranquilizing drugs. The combination of these factors points up the problems of conveying to the patient a realistic notice that he has been certified for 14-day intensive treatment but that he has the right to counsel and to seek release on habeas corpus. Absent an understanding by the patient of the nature of his detention and of his rights, it is difficult to perceive how he could knowingly decide whether or not to exercise them. A problem may also be presented by the possibility of role conflict arising from the entrusting of the notice and explanation of rights function to the same agency which undertakes to perform the therapeutic function.

Accordingly, it is appropriate that in any certification of a patient for 14-day involuntary intensive treatment, procedures be established which will assure that the patient's rights receive meaningful protection. Respondent court's view that the fact of involuntary certification demonstrates that the patient has not consented to the treatment and that such lack of consent is tantamount to a request for release,[9] thereby triggering the patient's right to counsel and to seek habeas corpus, illustrates one possible procedure: that is, as respondent court ordered, upon certification the patient shall promptly be visited by appointed counsel.[10]

Other procedures suggested by the Citizens Advisory Council (see fn. 8, *ante*) are (1) that the certificated person be provided with counsel at the time he receives the written notice of certification under section 5252; (2) that counsel or some other third person not connected with the treatment facility be present at the time the patient's right to a hearing is explained to him; (3) that a third party—the patient's attorney, the public defender,[11] or the mental health counselor[12]—visit the patient immediately

---

[9]The question has also been raised as to what other conduct or language by the patient might be construed to be a request for release. For example, would an escape attempt constitute such a request? Would a comment that "I want out, but I don't wish to go to court," or the assertion that "I don't like it here," be so construed?

[10]Of course, if the patient already has counsel—to whom section 5253 requires that notice of the certification be sent—that fact could readily be made known to the court with whom the certification notice is filed, thereby obviating the necessity of court-appointed counsel.

[11]We are informed that the office of public defender has not been established in the County of San Diego. (See Gov. Code, § 27700 et seq.)

[12]Section 6775 provides that "The office of counselor in mental health may be created in any county in this state by the board of supervisors thereof. The counselors in mental health to serve under the provisions of this chapter [§§ 6775-6779] shall be nominated and appointed by the judge of the superior court . . . ." (Added 1967; operative July 1, 1969; based on former § 5025.)

Section 6776 deals with the compensation of such a counselor; section 6777 provides that a counselor's term of office shall be during the pleasure of the court; section 6778 states that a counselor "may perform such services as are designated by the

after the notice of certification is submitted to the court and other parties as required by section 5253. It appears that the County of Sacramento is presently employing the third procedure just suggested, utilizing the services of the mental health counselor. It goes without saying that the attorney or other person called upon under any of the suggested procedures to see that the patient's rights are safeguarded would not necessarily advise or conclude that the patient should seek release. In many cases, it would unquestionably appear that the proposed intensive treatment will be in the best interests of the patient.

Additionally, it would appear that any one of the suggested procedures would provide adequate protection to the patient in any particular case, and that this court should not undertake to lay down rigid rules on the subject, but instead should only suggest ground rules which, as in the *Miranda* and *Dorado* cases,[18] will provide guidelines to those charged with carrying out the provisions of the LPS act.

■ For the reasons stated, it is our conclusion that respondent court acted within its jurisdiction in issuing the order of which petitioners complain. The alternative writ heretofore issued is discharged, and the peremptory writ is denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

county" and shall have the powers of a peace officer; and section 6779 states that any statutory reference to "psychopathic probation officers" means and refers to the counselors in mental health provided for as above.

[18]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].