[Civ. No. 8218.   Third Dist.   Apr. 22, 1952.]

E. L. WALTER, Petitioner, v. E. G. ADAMS, as County Clerk, etc., Respondent; JOHN A. COLBURN, Real Party in Interest.

C. Ray Robinson and James A. Cobey for Petitioner.

Don C. Mayes, District Attorney, for Respondent.

Dunne, Dunne & Phelps and Preston, Braucht & George for Real Party in Interest.

THE COURT.—This is a proceeding in mandate by petitioner Walter to secure an order of this court directing respondent, the County Clerk of Merced County, to omit from the ballots to be used at the primary election to be held June 3, 1952, the name of John A. Colburn, the real party in interest herein, as a candidate for the office of judge of the Atwater Judicial District. (A judicial district created by action of the board of supervisors of that county, pursuant to the Municipal and Justice Court Act of 1949, as amended, 1 Deering's General Laws, Act 1880.)

From the pleadings it appears that Colburn, prior to August 1, 1951, and continuously thereafter until at least the 28th day of December, 1951, was admittedly the duly qualified and acting city judge of the City Court of Atwater,

a sixth class city.  Petitioner Walter was, prior to August 1, 1951, and continuously thereafter through December 31, 1951, the incumbent justice of the peace of Township No. 8 of said county and as such held court in the city of Atwater.

On August 1, 1951, at a meeting of the Atwater city council, at which meeting Colburn was present, a motion was duly made and adopted that the city clerk be instructed to write the county board of supervisors requesting that the county assume the responsibility of the city court on January 1, 1952.  Judge Colburn also attended a meeting of the city council held on November 7, 1951, at which time "brought up the question of the new court system which was slated to be effective on January 1, 1952" (excerpts from minutes of council meeting).  At this meeting he stated to the council "his understanding" concerning the disposition of revenue derived from "city arrests and violations," and after a brief discussion of that subject the same was tabled pending receipt of full information through the city clerk.  On December 19, at a meeting of the city council, at which Judge Colburn again was in attendance, a letter to the council from Judge Walter was read wherein he requested the city of Atwater to deliver all of the records of the city court to his court on Saturday, December 29, 1951, "in order to enable him to work during the weekend and be ready to handle all business on January 1st. 1952" (excerpts from minutes of council meeting).  Apparently in pursuance thereto the council at that meeting instructed the city clerk to contact one Uhle with regard to auditing the city court dockets and the books of Judge Colburn "for the reason of Colburn's termination of office on December 31st, 1951."

Although the answer of Judge Colburn to the petition alleges that on December 28, 1951, he, "in the presence of the city clerk and the chief of police of the City of Atwater and newspaper photographers," delivered to Judge Walter "as requested by said City Council" his seal of office he denies that Walter thereupon took the oath of office of city judge but avers that at said time Judge Walter "took an oath of office as prospective judge of the justice court of the Atwater Judicial District so that petitioner might thereafter act as said judge of said justice court of the Atwater Judicial District when said court came into existence on January 1, 1952."  Colburn further avers that "since January 2, 1952, [he] has not acted or purported to act as city judge of the city court of the City of Atwater."

On January 2, 1952, the city council of Atwater, by a motion duly made and carried, appointed Judge Walter to "handle city court cases and that the records show that the appointment and transfer of records be retroactive to December 28, 1951."

At the hearing before this court on April 14, 1952, evidence of occurrences subsequent to December 28 was offered in evidence by petitioner subject to the court's ruling upon a motion to strike of counsel for Judge Colburn. We have concluded that, with respect to those matters hereinafter mentioned, the motion must be overruled and the matters objected to considered as in evidence. From such evidence it appears that Judge Walter took an oath to perform the duties of city judge of the city of Atwater on December 28, 1951. Furthermore from the evidence it appears that Judge Colburn received and receipted for three traffic violation fines, signing the receipts "E. L. Walter, By J. A. Colburn"; that from December 28, 1951 through December 31, 1951, and after receiving the seal and the records of the city court, Judge Walter presided as judge of said city court in matters then before it; and that on January 2, 1952, Judge Colburn accepted employment by the county of Merced in the capacity of a guard at the County Rehabilitation Center. It further appears that on February 16, 1952, in the city of Merced, the Judicial Council, pursuant to the provisions of said act, gave a qualifying examination for those who, although not attorneys, aspired to the office of judge of the new judicial districts, and that Judge Colburn did not take such examination.

Relying upon the foregoing summary of the facts petitioner seeks to prevent the respondent county clerk from placing the name of Judge Colburn on the ballot for the June 3, 1952, primary election as a candidate for the office of justice of the Eighth Judicial District of Merced County. His primary contention is that the enumerated acts constituted an abandonment by Colburn of the office of city judge and therefore he was not a justice of a superseded court on January 1, 1952 as that term is used in the applicable statutes, and therefore Colburn is not now qualified to have his name appear on the ballot as mentioned. And as petitioner Walter was the incumbent of the Class B Justice Court on that date he was, in accordance with the provisions of the act, the only eligible judicial officer within the newly created judicial district, and hence the only one who could become the judge of said judi-

cial district court and could remain as such until the election or appointment and qualification of his successor.

His argument in support of such contention rests in the main upon the provisions of the Municipal and Justice Court Act of 1949 (1 Deering's Gen. Laws, Act 1880), which provides in part, in section 2 thereof, that "On January 1, 1952, . . . the judges or justices of existing courts inferior to the superior court in any city, township or judicial subdivision . . . for which a . . . justice court is established shall, if eligible, become and be the judges [or judge] of such . . . justice court until the election or appointment and qualification of their [his] successors as hereinafter provided. If, however, the number of incumbent judges or justices who are eligible to become judges of a . . . justice court and who have not by written statement filed with the county clerk on or before December 30, 1951, disclaimed their desire to succeed to office exceeds the number of judicial offices provided by law for such . . . justice court, said incumbents shall not automatically succeed to judicial positions in the . . . justice court, and the existing courts shall continue to function within the district until the first judge or judges of said . . . justice court shall be elected by the qualified electors of the district at the first general state election held following the expiration of 90 days and qualify."

He further relies upon the eligibility provisions as set forth in part of section 13 of the act, providing that ". . . the judges . . . of a justice court shall be electors of the judicial district . . . in which they are elected or appointed; provided, that this requirement shall not affect the right of any person to automatically succeed to an office or position under Sections 2, 3, and 4 of this act; . . . No person shall be eligible to the office of judge of a justice court unless he either has been admitted to practice before the Supreme Court of this State or has passed a qualifying examination under regulations prescribed by the Judicial Council; provided, that this requirement shall not apply to the incumbent of a superseded inferior court who succeeds to the office of judge of a justice court or is elected thereto at the first election of judges under this act or who seeks re-election to such office."

Respondent contends that Government Code, section 1770, provides the exclusive method by which such an office can be vacated, that is, "An office becomes vacant on the happening of any of the following events before the expiration of the term: (c) His resignation. (g) His ceasing to discharge the

duties of his office for the period of three consecutive months, except when prevented by sickness, or when absent from the State with the permission required by law." Also that there is no showing that any attempt was made to comply with the provisions of Government Code, section 1750, which provides in part that "resignations shall be in writing, and made as follows: (d) By all officers of a county or judicial district not commissioned by the Governor, to the clerk of the board of supervisors of their respective counties."

It is Colburn's argument that since he has not taken any of the steps specified in the code sections, and since the appointive body, i. e. the Atwater city council took no official action to appoint a successor and thereby impliedly remove him from office until January 2, 1952, nor had he filed a disclaimer as provided for in section 2 of the Municipal and Justice Court Act of 1949, he was, on January 1, 1952, the incumbent city judge and therefore qualified to have his name appear on the June 3, 1952 ballot for the office in question. He further contends that even assuming the procedures set forth in the quoted sections are not exclusive and there may be an abandonment of an office nevertheless in order to constitute an abandonment the actions of the office holder must be voluntary and intentional.

■ Although, as respondent states, Government Code, section 1770, enumerates the "Events Causing Vacancy in Office" and provides that "an office becomes vacant on the happening of any of the following events before the expiration of the term: . . . (c) His resignation," that is not to say that the quoted portion of said section is exclusive. In the early case of *People* v. *Porter,* 6 Cal. 26, 27, it was held that "the tenure of an office" depends on "the incumbent."

■ ■ The rule as stated in 43 American Jurisprudence, section 172, page 26, is that "The abandonment of an office may be indicated by the action of the incumbent in voluntarily surrendering it to another under a mistaken belief that the latter has been elected as his rightful successor, or even by acquiescing in his own removal." and that text, speaking of the elements necessary to constitute such an abandonment, says in section 173, "In order to constitute an abandonment of office, the abandonment must be total, and under such circumstances as clearly to indicate an absolute relinquishment. Moreover, the officer should manifest a clear intention to abandon the office and its duties, although his intention may be inferred from conduct. If the acts and statements are such

490

as clearly indicate absolute relinquishment, a vacancy is thereby created without the necessity of a judicial determination.'' Also in McQuillin on Municipal Corporations, volume 3, section 12.123, page 439, it is stated that ''An office may be vacated by abandonment. Abandonment may be treated as a constructive resignation. . . . But what acts will constitute abandonment or implied resignation of an official depend, of course, upon the circumstances of the particular case and the controlling law.''

In line with the general rule this court in *People* v. *Davidson*, 2 Cal.App. 96 [83 P. 159], held that a finding that one person had abandoned the office of constable was sustained by the evidence where it appeared that Herson, under the belief that one Peters was the successful candidate for the office of constable, vacated his office, gave Peters his badge, pistol, handcuffs, acquiesced in Peters' desire to appoint him a deputy, took the oath as such deputy and continued to thereafter so act. These facts, the court says, ''conclusively show a surrender and abandonment.''

■ In the present case the facts show that over a long period beginning in August, 1951, to the date he filed his intention to become a candidate for the office, Colburn evidenced no intent to retain the office of city judge; to the contrary he acquiesced and participated both actively and passively in a series of events culminating with the public ceremony on December 28, 1951; he participated with the city council in a discussion relative to the merger of the two courts on January 2, 1952; he advised the council concerning matters involved in the merger; he raised no objection when the council discussed the ''termination of his court on January 2, 1952''; he voluntarily delivered the records of his court, including the seal thereof, to Walter; he signed Walter's name by his own to the records of the city court on December 30, 1951; he acquiesced in Walter's acts as city judge between December 29 and December 31; he took employment by the county of Merced in a position wholly incompatible with that of a judge of the Atwater Judicial District; he did not by word or act evidence any intent whatsoever to retain his position as judge of the city court of Atwater. We cannot interpret these actions in any other manner than that Colburn voluntarily intended to and did effect an abandonment of his office as city judge on December 28, 1951.

■ Colburn further contends he is eligible to have his name placed on the primary ballot by reason of the fact that

he has not filed a disclaimer of his desire to be a candidate for the office of judge of the new judicial district as provided in section 2 of the Municipal and Justice Court Act of 1949, and that by virtue of said provision he cannot be held to have abandoned his office; the essence of the argument in this regard appears to be that in the absence of a formal resignation on his part the disclaimer provided for in said section is the only other means by which he could have removed himself from eligibility.

It necessarily follows that if we are correct in our conclusion herein that Colburn abandoned his office as of December 28, 1951, then the provisions contained in said section 2 are of no materiality. He was not an incumbent of a superseded judicial office on January 1, 1952, hence the disclaimer provision has no application as to him. Furthermore we do not construe this provision as having been intended to, or that it did, operate so as to abrogate the general right of a public officer to abandon his office.

Colburn's final contention is that the petition for the writ is premature. In support thereof he argues that to grant the writ at this time would be to hold that eligibility must be established prior to the election—a conclusion contrary to the rule of this state.

The petition alleges that it is not denied that ''Neither Petitioner nor the Real Party in Interest has been admitted to practice before the Supreme Court of this State and neither has taken the qualifying examination for judge of a justice court under regulations prescribed by the Judicial Council.'' The record before us further shows that on February 16, 1952, the Judicial Council, acting in pursuance with the provisions of the act, conducted such an examination in the city of Merced.

We cannot agree with his argument that under such circumstances he could conceivably fulfill all of the requirements of a candidate for such office as to the date of election, June 3, 1952.

The situation thus presented is not at all analogous to that in the case of *Samuels* v. *Hite*, 35 Cal.2d 115 [216 P.2d 879], the case relied upon by Colburn. There can be no question but that the Legislature provided three qualifications of eligibility, (1) incumbency as of January 1, 1952, (2) admission to the practice of law or (3) the successful passing of an examination prescribed by the Judicial Council.

It may be argued that in the Samuels case if the candidate could have shown (which he could not) that he would have been eligible as of the date of the election he would have satisfied the requirements of section 159 (a) of the Code of Civil Procedure. However, that is not the situation presented in the instant case.. Here the condition of Colburn's eligibility was not something exclusively within his control such as the taking of the qualifying examination given by the Judicial Council. In fact, as stated, such an examination was given on February 16, 1952, but he failed to avail himself of the opportunity to take the same. Furthermore the condition of his eligibility was not such as could be met by the mere passage of time as may be inferred in the Samuels case, since he admits he is not licensed to practice law in this state. Therefore, in the absence of any showing to the contrary, we conclude that the petition is not premature.

The demurrer of the real party in interest to the petition is overruled.

Let the writ issue.