[Civ. No. 4787. Fifth Dist. Jan. 9, 1980.]

Guardianship of the Person and Estate of
CECELIA ANN SMITH, an Incompetent Person.
FRANK L. FREITAS, as Public Guardian, etc.,
Petitioner and Respondent, v.
DAVID E. LOBERG, as Director, etc., Objector and Appellant.

[And 12 other cases.]*

---

*Guardianship of Travis (Civ. No. 4788); Conservatorship of Vasquez (Civ. No. 4789); Conservatorship of Barrett (Civ. No. 4790); Conservatorship of Sanchez (John) (Civ. No. 4791); Conservatorship of Sanchez (Trinidad) (Civ. No. 4792); Conservatorship of Sanchez (Raymond) (Civ. No. 4793); Conservatorship of Sanchez (Rosie) (Civ. No. 4794); Conservatorship of Sanchez (Thomas) (Civ. No. 4797); Conservatorship of Sumpter (Civ. No. 4795); Conservatorship of Shepard (Civ. No. 4796); Conservatorship of Sanchez (Lorena) (Civ. No. 4798), Conservatorship of Tani (Civ. No. 4799).

## Counsel

George Deukmejian, Attorney General, L. Stephen Porter and Thomas E. Warriner, Assistant Attorneys General, and Anne S. Pressman, Deputy Attorney General, for Objector and Appellant.

James B. Lindholm, Jr., County Counsel, and John P. Daly, Deputy County Counsel, for Petitioner and Respondent.

## Opinion

**FRETZ, J.*—**The respondent, the Public Guardian of San Luis Obispo County, filed 13 petitions in the superior court to have appellant, the Director of Developmental Services (hereafter the director), appointed as successor conservator or guardian for 12 San Luis Obispo County residents who had previously been under conservatorship or guardianship of the respondent and, in the 13th case, for a resident not previously under conservatorship or guardianship. The director appeared and objected to the petitions. Hearings were conducted. There was no nomination in any of the 13 matters other than that said to have been contained in the petitions themselves. The director did not promptly "accept or reject such nomination in writing." The director did not petition for his appointment to act as conservator or guardian of any of the alleged developmentally disabled persons. Evaluations of the patients were not before the court. The court granted each petition. Appellant filed a timely notice of appeal from each order. The 13 cases were consolidated on appeal. We reverse.

The main issue presented is whether the Health and Safety Code or any other law authorizes anyone other than the director to petition for

*Assigned by the Chairperson of the Judicial Council.

the appointment of the director as conservator or guardian of developmentally disabled persons.

The director claims that the statutory scheme of conservatorship and guardianship for developmentally disabled persons as contained in section 416 et seq. of the Health and Safety Code clearly requires reversal.

The respondent argues that the Health and Safety Code sections should be interpreted along with other law to require the director to accept appointment under these conditions. Respondent also argues that *Guardianship of R. C.* (1977) 72 Cal.App.3d 417 [140 Cal.Rptr. 133] requires that result. As we shall show, that case does not so require.

This court must now decide what Mr. Justice Gardner regarded as the "main event"—a fight between the county and the state as to just which entity has the financial responsibility for the care of persons labeled as developmentally disabled. (See dis. opn. in *Bellino* v. *Superior Court* (1977) 70 Cal.App.3d 824, 831 [137 Cal.Rptr. 523].) Yet the "fight" is not over money alone. We are told that the state provided services through the local agencies of the Department of Developmental Services to some of the 13 people and that others had applied for such services, all without the director being guardian or conservator. From the limited evidence before us on the point, it appears the question is one of administration, not money.

Each side presents a different interpretation of the controlling statutes. The basic rules concerning statutory construction were stated in *California Mfgrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]: "Where a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature. (E.g., *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Select Base Materials* v. *Board of Equal., supra,* at p. 645; *Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].) Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided. (*Fields* v. *Eu* (1976) 18 Cal.3d 322, 328

[134 Cal.Rptr. 367, 556 P.2d 729]; *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 98 [132 Cal.Rptr. 657, 553 P.2d 1129]; *Stanley* v. *Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532]; *Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].)" With these principles in mind, an examination of the statutory scheme set forth in the relevant portion of the Health and Safety Code is required.

Section 416.5 of the Health and Safety Code[1] provides for the nomination of the Director of the Department of Developmental Services as a conservator or guardian through the following procedure: "The director may be nominated by any one of the following to act as guardian or conservator for any developmentally disabled person; (1) who is or may become eligible for the services of a regional center, or (2) who is a patient in any state hospital, and who was admitted or committed to such hospital from a county served by a regional center:

"(a) A parent, relative or friend.

"(b) The guardian or conservator of the person or estate, or person and estate, of the developmentally disabled person to act as his successor.

"(c) The developmentally disabled person.

"*Such nomination shall be in writing* and may provide that the authority of the director is to take effect at some date or occurrence in the future that may be fixed in the nomination.

"*The director shall promptly accept or reject such nomination in writing.* His acceptance shall be binding upon him and his successors. *Any nomination to take effect in the future may be withdrawn by the nominator before its effective date.*" (Italics added.)

After the nomination process is complied with, the director can petition for appointment as conservator/guardian under section 416.6 which provides: "*In every case in which he has agreed to do so, the director may petition for his appointment to act as conservator or guardian of the alleged developmentally disabled person* and his estate or his per-

---

[1]References hereafter without code name are to the Health and Safety Code; other code references are designated by code name.

son or estate in the superior court of the county where the main administrative office of the regional center serving such developmentally disabled person is located." (Italics added.) At the conservatorship or guardianship proceedings, the court is to consider certain evaluation reports forwarded by the regional center associated with the Department of Developmental Services. Section 416.8 codifies this procedure: "In addition to the requirements of the Guardianship Act or the Conservatorship Act, as the case may be, *the court shall be provided by the regional center with a complete evaluation of the developmentally disabled person for whose protection the appointment is sought. The report shall include* a current diagnosis of his physical condition prepared under the direction of a licensed medical practitioner and a report of his current mental condition and social adjustment prepared by a licensed and qualified social worker or psychologist. *The evaluation report required by this section* shall not be made part of the public record of the guardianship or conservatorship proceedings and shall be open to inspection only by court personnel, the person who is the subject of the proceeding, his parents, guardian or conservator, the attorneys for such parties, and such other persons as may be designated by the court. If an affidavit or certificate has been filed as provided in Section 416.7 evidencing the inability of the alleged developmentally disabled person to be present at the hearing, the psychologist or social worker who assists in preparing the report shall visit the alleged developmentally disabled person and be prepared to testify as to his present condition." (Italics added.) Once the nomination, acceptance, petitioning and evaluation steps are completed, appointment may be accomplished through section 416.9 which states: "The court may appoint the Director of Developmental Services as guardian or conservator of the person and estate or person or estate of a minor or adult developmentally disabled person. The preferences established in Section 1753 of the Probate Code for appointment of a conservator shall not apply. An appointment of the Director of Developmental Services as conservator shall not constitute a judicial finding that the developmentally disabled person is legally incompetent." Section 416.10 is also relevant in its statutory prohibition of dual conservatorship or guardianship: "No appointment of both the Director of Developmental Services and a private guardian or conservator shall be made for the same person and estate, or person or estate. *The Director of Developmental Services may be appointed as provided in this article* to succeed an existing guardian or conservator upon the death, resignation or removal of such guardian or conservator." (Italics added.) Finally, the

duties of the director with regard to appointment are outlined in section 416.14. This provision mandates that: *"The Director of Developmental Services* shall consult with developmentally disabled persons and their families with respect to the services he offers, *and, in addition, shall*:

"(a) Act as adviser for those developmentally disabled persons who request his advice and guidance or for whose benefit it is requested.

"(b) *Accept appointment as conservator of the person and estate, or person or estate, of those developmentally disabled persons who need his assistance and protection, but who have not been judicially determined to be legally incompetent.* Such appointment shall not constitute a finding that the developmentally disabled person is legally incompetent.

"(c) Accept appointment as guardian of the person and estate, or person or estate of those developmentally disabled persons who are or have been judicially determined to be legally incompetent." (Italics added.)

Considering the above statutory scheme as a whole, appellant argues that in every case in which a prior guardian nominates the director to be successor guardian/conservator, the director must accept or reject the nomination. Only when he accepts can a petition be filed and only the director can petition for his appointment as guardian/conservator because section 416.6 so provides.

Respondent sees the statutes in an entirely different light. In effect, he argues that section 416.5 is part of one scheme which provides for a nomination-acceptance procedure, petitioning by the director, evaluation by the regional center and appointment as guardian or conservator. However, he sees an alternate procedure. This involves section 416.14, which sets forth the duties of the director. Respondent notes that section 416.1 says, "Unless exceptions are expressly made in this article, the provisions of the Guardianship Act (Prob. Code, § 1400 et seq.) and the Conservatorship Act (Prob. Code, § 1701 et seq.) shall apply to guardianship and conservatorship appointments made under this article." Relying upon this provision he contends, for example, that a relative or other person may petition for appointment of the director as guardian of a developmentally disabled minor under authority of Probate Code section 1440, that the petition is sufficient as a nomination and that the consent of the director is not required because probate pro-

ceedings do not mandate it. While an ordinary nominee could refuse to serve, this argument continues, the director cannot refuse to serve because section 416.14 defining the director's duties in connection with guardianship/conservatorship says he shall accept appointment.

Three bases are advanced in support of this argument: (1) the statutory language contained in sections 416.1 and 416.14, along with Probate Code sections 1400 et seq. (pertaining to guardianship) and 1701 et seq. (pertaining to conservatorship); (2) recent case law interpreting the scheme set forth under section 416 et seq.; and (3) the legislative actions surrounding the 1968 enactment which formed the crux of the present statutory scheme. We examine each of these.

### (1) *The Statutory Language.*

We are admonished to construe words in context and harmonize statutes both internally and with each other, to the fullest extent possible. (*California Mfgrs. Assn. v. Public Utilities Com., supra,* 24 Cal.3d 836, 844.)

What does the reference in section 416.1 to the Guardianship and Conservatorship Acts of the Probate Code mean as applied to "appointments made under this article"? Initially, we find that there are points not covered by the Health and Safety Code. For example, contents of the petition and form of notice of hearing are prescribed by the Probate Code (§§ 1435.4, 1435.5, 1461, 1754, 1754.5), but not by the Health and Safety Code. On the other hand, to say there are two different nominating and petitioning procedures ignores the clear wording of section 416.5. That section gives the director authority to accept or reject nominations. Section 416.6 says, "...the director may petition...." It authorizes no one else to do so. These provisions are in conflict with the Probate Code provisions and respondent's interpretation of section 416.14.

Furthermore, the code sections appear to be in an orderly sequence. Respondent's isolation of one sentence and his reliance upon that provision for the creation of a separate procedure is a strained, rather than harmonized, construction. Section 416.14, subdivision (c), can be construed harmoniously to mean that the director, if appointed by the court, shall accept his appointment. Since section 416.14 does not say "accept nomination," it does not conflict with section 416.5.

Interpretation of the statutory language, therefore, favors appellant's position.

### (2) *Case Law.*

Second, respondent claims that *Bellino* v. *Superior Court, supra,* 70 Cal.App.3d 824, and *Guardianship of R. C., supra,* 72 Cal.App.3d 417, allow the county guardian to file a petition for appointment of the director. In *Bellino,* the court was considering whether juvenile court proceedings to make several developmentally disabled minors dependent children of the juvenile court under Welfare and Institutions Code section 300 (formerly § 600) had to be initiated by a county officer (the probation officer acting for the county Department of Public Social Services) or by the director pursuant to section 416 et seq. The court in the *Bellino* case held only that developmentally disabled or any other abandoned children come within the jurisdiction of the juvenile court under Welfare and Institutions Code section 300 et seq. (*Bellino, supra,* 70 Cal.App.3d at pp. 828-830.) While that case at the trial level appeared to require the director to act (*id.,* at p. 827), the director was not a party. The holding in *Bellino* hinted at the problem, but provided no law helpful here.

In *Guardianship of R. C., supra,* 72 Cal.App.3d 417, the director had apparently consented to and filed the petition for his appointment as guardian. Thereafter, the ward appealed upon the ground that the director's appointment as guardian of mentally disabled persons under section 416 was in conflict with the director's role as manager of the state mental hospital system. (*Id.,* at pp. 419-420.) Petitioner's reliance upon the passage contained on page 420 of that opinion[2] does not support respondent's position. It only says that the director may be *nominated* by a prior guardian or conservator; not that the prior guardian or conservator can *petition* for appellant's appointment. Even if this section could be construed to indicate that the nomination contained in the petition is sufficient, it still lacks the acceptance of the nomination

---

[2]"There are two methods by which the director may be appointed guardian of a developmentally disabled person: One method is through nomination by a parent, relative or friend of the developmentally disabled person, or through nomination by a prior guardian, or through nomination by the developmentally disabled person himself. (See Health & Saf. Code, § 416.5.) The second method by which the Director of Health may become guardian is by the director's making direct application to the court for appointment. (See Health & Saf. Code, § 416.6; 58 Ops.Cal.Atty.Gen. 688, 690 (1975).)" (*Guardianship of R. C., supra,* 72 Cal.App.3d at p. 420.)

by the director. Thus, when viewed in the light of a harmonious statutory scheme, respondent's reliance upon these cases is misplaced.

### (3) *Legislative Intent.*

Respondent's third argument is that the legislative history behind the 1968 bill which enacted section 416 et seq. indicates that the director was given primary responsibility for the guardianship program.

Counsel for the Subcommittee on Judiciary of the Senate Interim Committee on General Research indicated that there were two major areas of concern with the concept of appointing the county public guardian for a mentally retarded individual: "(1) As we are extremely mobile as a Society, the ward may be in a county other than that whose Public Guardian was previously nominated at the death of his parents, or the ward might be best advised to move to another county later due to the better job opportunities, services available, etc. In either case, utilization of a county guardian would necessitate a transfer of guardianship, which is undesirable as a frequent occurrence. Also, such a move might take the retarded person into a county where there is no Public Guardian. (2) The guardian himself should have some knowledge of the specialized requirements of the mentally retarded, and while Public Guardians in the large counties do have such knowledge, this is not a general characteristic. Their expertise more specifically relates to guardianship of estates." (Kay et al, *Legal Planning for the Mentally Retarded: The California Experience* (1972) 60 Cal.L.Rev. 438, 507, fn. 228.)

The legislative action underlying the 1968 act was detailed by the law review commentators who wrote the article. "The committee [Subcommittee on Judiciary of the Senate Interim Committee on General Research] therefore decided to abandon its efforts in this regard [at establishing a personal surrogate's office as a new state agency] and resolved instead to recommend that the Director of Public Health [currently the Director of Developmental Services], already charged with the responsibility of contracting for the regional centers, should also take responsibility for the guardianship program. The committee believed that the opposition of the county guardians would not be sufficient to defeat a bill cast in this form...[¶] The provisions of this final draft...[were] enacted without substantial change and...[were] approved and filed on August 8, 1968." (*Id.,* at pp. 507-508, fns. omitted.)

Although these passages presumably indicate a legislative intent that the director should take responsibility for a guardianship program, the actual enactment in part defeated the purpose by giving the director the authority to reject appointment.[3] Considering all the code sections, the director is not required to accept nomination, nor is he required to petition for his appointment.

Appellant's contention as to the analysis of the code sections is further supported by the provisions regarding public guardians contained in Welfare and Institutions Code sections 8006 and 8007. Section 8006 allows the county public guardian to take primary responsibility for the guardianship of a person requiring a conservator or guardian. But section 8007 provides that "when the public guardian makes application under Section 8006 for guardianship or conservatorship of the person and estate or person or estate of any person who is under the jurisdiction of the State Department of Mental Health or the State Department of Developmental Services such application may be granted, if sufficient under Section 8006, with the written consent of the department having jurisdiction of the person." Thus, the consent of the director who has had jurisdiction is required before a county public guardian may obtain letters of guardianship or conservatorship of one under the jurisdiction of the director.

Taken together, the Health and Safety Code sections indicate that the director's consent is necessary before procedures are started to make him the guardian/conservator and the Welfare and Institutions Code provisions indicate that his consent is also necessary before somebody else can become guardian of one who is under the jurisdiction of the State Department of Developmental Services.

■ It thus appears that the Legislature intended to give to the director the discretion to refuse acceptance of a nomination and the prerogative to not file a petition for his appointment to act as guardian or conservator. For these reasons, the trial court committed error in granting the petitions which the respondent public guardian had no authority to file.

Since the superior court, in effect, had no jurisdiction to grant petitions which were not properly before it, we need not reach the other

[3]The authors of the California Law Review article also recognized that the director had a longstanding policy to refuse appointment in certain cases. (60 Cal.L.Rev. at p. 510.)

issues raised by appellant—first, whether there was an abuse of discretion in acting without the presentation of the evaluation reports required by section 416.8, and second, whether there was sufficient evidence to support the determination that the proposed conservatees/ wards were developmentally disabled under the definition of Welfare and Institutions Code section 4512. Should proper petitions be filed by the director, evaluation reports would be prepared and presented to the court and the necessary findings would be made.

We are left, however, with respondent's contention that the appellant brought this appeal for frivolous reasons so as to justify the assessment of sanctions allowed by rule 26(a) of the California Rules of Court. Respondent contends that appellant needlessly encumbered this record with copies of the petitions and proceedings in each of the 13 cases. We find that having the complete record before us is not frivolous. If there had been a different resolution of the first question decided above, the complete record in each case might well have been necessary in order to determine what distinctions, if any, existed among the several cases. Furthermore, it would then have been necessary for us to rule upon the question of the augmentation of the record to include the evaluation reports which were considered below. Under the circumstances of this case, the request for augmentation is denied.

Pursuant to the agreement of counsel, we have taken notice of the cost of the preparation of the clerk's transcript and the differences in funds available to the differing agencies. However, in view of the lack of frivolity of this appeal, costs for preparation of the transcript are not assessed against appellant. In fact, appellant is entitled to costs on appeal.

Each of the 13 orders is reversed; costs on appeal awarded to appellant.

Franson, Acting P. J., and Hopper, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 20, 1980.