TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |
|---|---|
| OPINION | : |
| | : |
| of | : |
| | : |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney General | : |
| | : |

No. 93-802

November 10, 1993

Patricia A. Moore ("relator") has requested leave to sue Ronald Green ("defendant") in quo warranto pursuant to section 803 of the Code of Civil Procedure upon the following:

ISSUE OF LAW

Does defendant validly hold the office of Councilmember of the City of Compton by virtue of his appointment on June 8, 1993?

DISPOSITION

Leave to sue in quo warranto is granted to determine whether defendant was validly appointed to the office of Councilmember of the City of Compton.

STATEMENT OF FACTS

The City of Compton is a charter city. Pursuant to the city charter, the city council consists of an elected mayor and four elected councilmembers. With respect to the filling of vacancies in the city's elective offices, section 505 of the charter provides:

"A vacancy in any elective office, from whatever cause arising, shall be filled by appointment by the City Council . . . .

"In the event the City Council shall fail to fill a vacancy by appointment within thirty days after such office shall have been declared vacant, it shall forthwith cause an election to be held to fill such vacancy."

On December 15, 1992, Mayor Walter Tucker tendered his written resignation effective January 1, 1993. On June 1, 1993, Councilmember Omar Bradley was elected mayor for a four-year term commencing on July 1, 1993.

On June 8, 1993, Councilmembers Woods, Robbins, and Bradley appointed Councilmember Bradley to the vacancy in the office of mayor created by the resignation of Mayor Tucker. Immediately following the appointment, Councilmembers Woods, Robbins, and Bradley declared Councilmember Bradley's seat on the city council to be vacant, and appointed defendant to such vacancy for the unexpired term to and including June 30, 1995.

QUESTIONS OF FACT OR ISSUES OF LAW

Was the city council authorized to fill the vacancy in the office of mayor on June 8, 1993, or had such authority expired under the provisions of section 505 of the city charter?

Did the appointment of Councilmember Bradley as mayor on June 8, 1993 violate the common law rule against self-appointments?

Irrespective of the city council's authority to fill the vacancy in the office of mayor on June 8, 1993, or the application of the rule against self-appointments, did Councilmember Bradley's acceptance of the appointment create a vacancy in his council seat to which defendant could be appointed?

ANALYSIS

Section 803 of the Code of Civil Procedure provides that an action in the nature of quo warranto "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office. . . ."

In determining whether to grant leave to sue upon the complaint of a private party, this office considers the following factors: (1) whether the application has raised a substantial issue of law or fact which a court should decide and (2) whether it would be in the public interest to grant leave to sue. (See, e.g., 76 Ops.Cal.Atty.Gen. 1, 2 (1993); 75 Ops.Cal.Atty.Gen. 112, 113 (1992); 73 Ops.Cal.Atty.Gen. 357, 358 (1990).) We believe that the application herein presents at least three questions of fact or law which should be judicially resolved.

    1.    Was The City Council Authorized On June 8, 1993 To Fill The Vacancy In the Office Of Mayor?

As noted at the outset, section 505 of the city charter states that if a vacancy arises in an elective office, the vacancy is to be filled by the city council within 30 days. Otherwise, the city council "shall forthwith" call a special election to fill the vacancy. Here, the city council attempted to fill the vacancy in the office of mayor five months after it occurred. If the council could not fill the vacancy at that time, could it appoint defendant to replace the councilmember appointed to the office of mayor?

In 64 Ops.Cal.Atty.Gen. 42, 45 (1981), we stated with respect to the interpretation of city charters:

"In interpreting the charter provision at issue, the same principles of construction are applicable as are applied in interpreting the Constitution or general laws. (See *Diamond International Corp* v. *Boas* (1979) 92 Cal.App.3d 1015, 1030-1031.) Accordingly, the ordinary and usual import of the language used must be given effect (*Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420, 423; *Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438), with consideration given

to the document as a whole in order to ascertain the intent and purposes of its individual provisions. (*California Mfgs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.)"

Although we have not previously interpreted the charter provision in question, we have construed the following similar provision:

"The City Council shall fill any vacancy occurring in the office provided for in this chapter by appointment. If a vacancy occurs in an elective office and the city council fails to fill it within 30 days, it shall immediately call an election to fill the vacancy. . . ."

We concluded in a 1975 informal opinion that under this provision, the city council's duty to call an election was mandatory if the vacancy was not filled within the 30-day period. (Cal. Atty. Gen., Indexed Letter, No. IL 75-199 (Sept. 2, 1975); see also 41 Ops.Cal.Atty.Gen. 98, 101 (1963).)

The governing principle of law to be followed here is that when legislation prescribes the method by which a vacancy in a public office is to be filled, the mode prescribed is the measure of the power. (See *People* v. *Zamora* (1980) 28 Cal.3d 88, 98; *People* v. *Cazneau* (1862) 20 Cal. 503, 508; *Woodmansee* v. *Lowery* (1959) 167 Cal.App.2d 645, 653; Cal. Atty. Gen., Indexed Letter, No. IL 76-94 (Mar. 27, 1976).)

Accordingly, a substantial question of law exists as to whether the city council was authorized to fill the vacancy in the elective office of mayor on June 8, 1993, since the vacancy arose on January 1, 1993, some five months prior thereto. If that appointment was void, there was not a vacancy to which defendant could be appointed.

> 2. Did The Appointment Of Councilmember Bradley Violate The Doctrine Against Self-Appointments?

Councilmember Bradley was appointed on June 8, 1993, to the office of mayor based upon three affirmative votes, including his own, with one abstention. Following the usual rules of parliamentary procedure, his appointment would be valid (assuming the council had the authority to make the appointment) regardless of his own vote, since an abstention acts as an acquiescence "in the action taken by the majority of those who vote affirmative or negatively." (62 Ops.Cal.Atty.Gen. 698, 700 (1983); see *Dry Creek Valley Assn., Inc.* v. *Board of Supervisors* (1977) 67 Cal.App.3d 839, 843; 66 Ops.Cal.Atty.Gen. 336, 337, fn. 2 (1983).) However, in this case, section 607 of the city charter requires "the affirmative votes of at least three members of the City Council . . . for the enactment of any ordinance or resolution. . . ." Three "affirmative" votes would call into question Councilmember Bradley's own vote, since the abstention would not so qualify. (See 55 Ops.Cal.Atty.Gen. 26, 29 (1972).) But was the appointment an "ordinance or resolution" requiring three affirmative votes under the charter? This is but another question of law that merits judicial review and resolution.

If the council was authorized to make the appointment and three affirmative votes were required, did the appointment violate the common law rule against self-appointments? In 73 Ops.Cal.Atty.Gen. 357 (1990) we analyzed the rule against self-appointments with respect to the appointment of the Mayor of Oakland to the Oakland Port Commission. We stated:

"The Labor Council argues that an application of this common law rule to our facts would mean that Wilson was ineligible to be appointed by the city council to

the port commission and his appointment was invalid. Wilson, however, seeks to avoid this common law rule of public policy on the grounds that Oakland, as a `home rule' charter city, is not restricted by the common law and that any limitations on the city council's ability to appoint an individual to a city office must be found in the city charter itself. . . .

"In 66 Ops.Cal.Atty.Gen. 293 (1983) we considered the effect of common law rules on the appointment of a charter city's planning commissioner to simultaneously hold the office of county planning commissioner. We concluded:

`. . . Thus, the authority of a charter city [to authorize the holding of two offices at the same time] is not constrained by common law. The City may obviate, by appropriate legislation, the force and effect of the common law doctrine, thereby enabling the county to appoint a city planning commissioner as a county planning commissioner.' (*Id.*, at p. 297.)

Likewise, we believe that Oakland, a charter city, could by appropriate legislation abrogate the common law rule against self-appointments. The Legislature has made common law rules generally applicable throughout California by enacting Civil Code section 22.2. The statute provides:

`The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State is the rule of decision in all the courts of this State.'

In 66 Ops.Cal.Atty.Gen. 293, *supra*, we concluded that the `laws of this State' included ordinances adopted by cities and counties. (*Id.*, at pp. 298-300.) Accordingly, although a city or county normally may not adopt an ordinance inconsistent with a state statute (Cal. Const., art. XI, § 7; *Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414, 425-426), here Civil Code section 22.2 itself `authorizes' such inconsistency with respect to common law rules.

"This result would be equally applicable to charter cities. Although `ordinances enacted in a charter city relating to matters which are purely municipal affairs prevail over state laws covering the same subject' (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 505), `[a]s to matters which are of statewide concern, . . . home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters' (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61). Civil Code section 22.2, establishing the common law `in all the courts of this State,' appears to address a matter of statewide concern. (See *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 136; *City of Los Angeles* v. *State of California* (1982) 138 Cal.App.3d 526, 533.) Hence, Oakland would be subject to common law rules pursuant to Civil Code section 22.2, even though the qualifications for city offices might otherwise be considered a `municipal affair' over which a charter city normally has plenary authority. (See *City of Downey* v. *Board of Administration* (1975) 47 Cal.App.3d 621, 629; *Hiller* v. *City of Los Angeles* (1961) 197 Cal.App.2d 685, 689.)"

In addition to the common law rule against self-appointments, Government Code section 1752[1] may also be relevant to this issue. Section 1752 provides:

---

[1]All references hereafter to the Government Code are by section number only.

"(a)  Except as provided in subdivision (b), no person elected or appointed to the governing body of any city, county, or district having an elected governing body, shall be appointed to fill any vacancy on such governing body during the term of which he or she was elected or appointed.

"(b)  With respect to a general law city, if a vacancy in the elected office of mayor occurs, the council may fill that vacancy by appointing a member of the council to the office of mayor.  Any person appointed to fill the vacancy shall hold the office of mayor for the unexpired term of the former mayor.  Any vacancy created in the membership of a city council as the result of an appointment of a member to the office of mayor shall be filled in accordance with Section 36512, 36512.1, or 36512.2."

Subdivision (a) of section 1752 essentially codifies the doctrine against self-appointments with respect to the governing bodies of cities, counties, and districts.  Subdivision (b), however, excepts the factual situation presented herein -- where a councilmember is appointed to a vacancy in the office of mayor -- "with respect to a general law city."  Does the statute apply to charter cities as well?[2]

In our view, a substantial question of law is presented concerning the applicability of the rule against self-appointments with respect to the  appointment of Councilmember Bradley to the vacancy in the office of mayor on June 8, 1993, either in the context of the common law rule or section 1752 or otherwise.  As previously indicated, if Councilmember Bradley's appointment was invalid, defendant's appointment must also be subject to challenge.

3.      Did The Appointment On June 8, 1993 Create A Vacancy In Office?

If the city council was not authorized to appoint Councilmember Bradley to the office of mayor on June 8, 1993, or if the rule against self-appointments caused his appointment to be void, no vacancy would be created in his office as a councilmember to which defendant could be appointed.  Both appointments could thus be ruled void.

If, on the other hand, the city council was authorized to appoint Councilmember Bradley to the office of mayor on June 8, 1993, there would be little question that the appointment created a vacancy in his council seat.  He could not hold both offices at the same time under the city's charter.  The acceptance of the second office would constitute an automatic resignation from the first.  (Cal. Atty. Gen., Indexed Letter No. IL 76-94, *supra* ["were a councilman to be elected mayor or were he to assume that office, his qualifying as mayor would automatically vacate his office as a city councilman"].)

Alternatively, it may be argued that even if the city council was not authorized to fill the vacancy or the rule against self-appointments voided the appointment, Councilmember Bradley's acceptance of the office of mayor constituted a resignation from or abandonment of his council seat.  A vacancy would thus be created to which defendant could have been appointed.

---

[2]We note the possibility that section 1752 could be applicable to the City of Compton pursuant to section 400 of the city charter which provides in part:

". . . [the city] shall also have the power to exercise any and all rights, powers and privileges heretofore or hereafter established, granted or prescribed by any law of the state, by this Charter, or by other lawful authority . . . ."

Pursuant to article XI, sections 3 and 5 of the California Constitution, as to matters of purely municipal concern, charter cities are autonomous and not subject to general laws. This autonomy extends to the election and appointment and other matters relating to municipal officers and employees. (See *Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 394-411; *California Fed. Savings & Loan Assn* v. *City of Los Angeles* (1991) 54 Cal.3d 1, 11-18; *Cawdrey* v. *City of Redondo Beach* (1993) 15 Cal.App.4th 1212, 1218-1228.) However, here the city charter does not contain a provision regarding the resignation or abandonment of office by municipal officers.

With this "vacuum" in mind, we note that as to resignations, section 1750 provides in part:

"Resignations shall be in writing, and made as follows:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) By officers of a municipal corporation, to the clerk of the legislative body of their corporation."

Councilmember Bradley did not indicate orally or in writing that he intended to resign his council seat unconditionally (i.e., that he intended to give up his council seat even if his appointment as mayor was void) when he was appointed mayor on June 8, 1993.

As to whether Councilmember Bradley's conduct demonstrated an "abandonment" of his council seat, we find that section 1770 provides numerous situations whereby a vacancy is created in an office, including the officer's "ceasing to discharge the duties of his office for a period of three consecutive months, except when prevented by sickness, or when absent from the state with the permission required by law." In *Walter* v. *Adams* (1952) 110 Cal.App. 2d 484, the Court of Appeal ruled that this form of statutory abandonment was not exclusive:

"Although, as respondent states, Government Code, section 1770, enumerates the `Events Causing Vacancy in Office' . . . that is not to say that . . . said section is exclusive. In the early case of *People* v. *Porter*, 6 Cal. 26, 27, it was held that `the tenure of an office' depends on `the incumbent.' The rule as stated in 43 American Jurisprudence, section 172, page 26, is that `The abandonment of an office may be indicated by the action of the incumbent in voluntarily surrendering it to another under a mistaken belief that the latter has been elected as his rightful successor, or even by acquiescing in his own removal,' and that text, speaking of the elements necessary to constitute such an abandonment, says in section 172, `In order to constitute an abandonment of office, the abandonment must be total, and under such circumstances as clearly to indicate an absolute relinquishment. Moreover, the officer should manifest a clear intention to abandon the office and its duties, although his intention may be inferred from conduct. If the acts and statements are such as clearly indicate absolute relinquishment, a vacancy is thereby created without the necessity of a judicial determination.' Also in McQuillin on Municipal Corporations, volume 3, section 12.123, page 439, it is stated that `An office may be vacated by abandonment. Abandonment may be treated as a constructive resignation. . . . But what acts will constitute abandonment or implied resignation of an official depend, of course, upon the circumstances of the particular case and the controlling law." (*Id.*, at pp. 489-490.)

Accordingly, even if Councilmember Bradley's appointment to the office of mayor was void for one or more reasons, he may still have vacated his council seat by his conduct, enabling

defendant to be validly appointed.  We believe that whether Councilmember Bradley effectively resigned or abandoned his council seat on June 8, 1993, either pursuant to the city charter or under other legal principles, presents substantial questions of law and fact.

## THE PUBLIC INTEREST

As noted at the outset, we require not only that a substantial question of law or fact is presented in an application for leave to sue, but that it would be in the public interest to have the matter decided by a court.[3]

Since the unexpired term to which defendant was appointed does not terminate until July 1, 1995, we believe it would be in the public interest to have a court determine if defendant does or does not validly hold the office of councilmember,[4] and if he does not, to permit the vacancy to be filled by someone legally elected to or legally appointed to that office.

\* \* \* \* \*

---

[3]"In this regard, we note that "[i]t is not the province of the Attorney General to determine which party should or is likely to prevail in a quo warranto proceeding."  (74 Ops.Cal.Atty.Gen. 26, 29 (1991).)

[4]In a recent opinion, we concluded that it was particularly appropriate for a court to decide upon the proper interpretation and application of the terms of a city charter.  (76 Ops.Cal.Atty.Gen. 157, 167 (1993).)