[No. A039381. First Dist., Div. Four. Jan. 25, 1989.]

NORTH BAY REGIONAL CENTER, Plaintiff and Respondent, v. SHERRY S., Defendant and Appellant.

**COUNSEL**

Paul D. Fogel and Crosby, Heafey, Roach & May for Defendant and Appellant.

Scott H. Carter for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, John J. Klee, Jr., Deputy Attorney General, Judith A. Enright, Robert E. Young, Eric R. Gelber, Kim Swain and Ellen S. Goldblatt as Amici Curiae.

---

OPINION

CHANNELL, J.—

## I. INTRODUCTION

Respondent North Bay Regional Center (NBRC) filed a petition in the superior court for an order admitting appellant Sherry S. to Stockton State Hospital. The petition was granted. On appeal Sherry's attorney contends that the order must be set aside because NBRC was not authorized to prosecute such a petition.

The appeal presents an issue which we understand to be of statewide concern: What is the proper procedure for admitting to a state hospital[1] a severely developmentally disabled but nondangerous adult who is not represented by a parent, guardian, or conservator? Both parties seem to contend that the governing statutes do not afford a clear remedy. We conclude, on the contrary, that the governing statutes contemplate the appointment of the Director of Developmental Services as the client's conservator. In the absence of some demonstrated inadequacy in this procedure, the adoption of a judicially fashioned procedure, as occurred here, is unwarranted.

## II. FACTS

Sherry is 21 years old. She has an I.Q. under 20. Estimates of her developmental age equivalence range between four months and two years. She cannot walk or use language. She is incontinent. Even with assistance, she cannot bring her hand to her mouth to use a spoon to feed herself. She is extremely particular about who feeds her, and if she is agitated or upset by her environment she will gag or choke, risking aspiration of food. She occasionally injures herself through a severe reflex which causes her to bite

---

[1] The parties sometimes use the term "developmental center" to refer to state hospitals in general and the Stockton facility in particular. For consistency and ease of reference we use the term "state hospital." (See Welf. & Inst. Code, §§ 4440, 4440.5.)

her lip, causing bleeding. A psychologist testified that she is "profoundly retarded" and "very gravely disabled."

Sherry has not caused or threatened harm to herself or others, and suffers from no known emotional or mental disorder other than mental retardation. However, a psychologist agreed that "she's dangerous to herself in the sense [that] if you wheeled her out on the street and nobody took care of her, she would die."

At the time of trial in June 1987, Sherry's family had not seen her in several years and called only rarely to check on her welfare. For the seven years preceding trial she was cared for in a nursing home for severely developmentally disabled individuals. However, Sherry's difficult feeding needs had come to exceed the scope of the services available at the home. Her social worker conducted two statewide searches for an alternative community placement, but the facilities contacted indicated that Sherry's eating skills were so poor that she would require more attention than they could provide. The social worker then contacted state hospitals, and found an "appropriate bed" at the state hospital in Stockton.

Apparently acting at the request of NBRC, the Napa County District Attorney's office filed a petition for Sherry's admission to the state hospital under Welfare and Institutions Code section 6500, which provides for the involuntary commitment of a mentally retarded person found to be "a danger to himself or others." Sherry was represented in that proceeding by the public defender's office. Noting that the issue might be one of "form over substance," Sherry's counsel suggested that section 6500 was inapplicable because it was directed at "a person that is physically assaultive to others or themselves." He opined that Sherry's admission should have been sought under *In re Hop* (1981) 29 Cal.3d 82 [171 Cal.Rptr. 721, 623 P.2d 282]. The trial court denied the district attorney's petition on the ground that Sherry was not dangerous within the meaning of section 6500.[2]

NBRC asked the district attorney's office to file a second petition for state hospitalization, this time on the ground that Sherry was "gravely disabled." Although the district attorney's office had apparently made a practice of filing such petitions in the past, the deputy district attorney assigned to Sherry's case declined to do so because he believed he lacked authority to seek hospitalization on grounds of grave disability.

Faced with this refusal, the regional center filed a petition in its own name, under the stated authority of *In re Hop, supra,* seeking Sherry's

---

[2] That ruling was not appealed, and we do not decide its correctness. (See fn. 4, *infra*.) However, on stipulation of the parties we have taken judicial notice of the record in that matter.

placement in a state hospital on the ground that she is "a developmentally disabled person who is . . . gravely disabled and . . . in need of state hospitalization, and . . . unable or unwilling to consent to such admission and treatment . . . ." At the hearing Sherry was again represented by the public defender. At the close of evidence her attorney expressed reservations about the legality of the petition but observed, "She has no place that she can stay. The care home is at the point that they intend to just deposit [Sherry] with the Regional Center." Therefore, he said, he would "accede" to the court's "jurisdiction to grant the petition," but would probably appeal from the order.

The trial court granted the petition. It found that Sherry was gravely disabled, that the least restrictive placement for her was a state hospital, and that she was unable or unwilling to consent to admission. It noted that she "obviously needs desperately to be cared for properly and it's a life threatening situation." Citing *In re Hop, supra,* the court ordered Sherry admitted to the Department of Developmental Services for placement in a state hospital. The order was to expire one year from the date of the hearing.

This appeal is from the order granting NBRC's petition.

### III. Mootness

■ The order appealed from expired by its terms on June 8, 1988. It appears that in July 1988, the San Joaquin County Superior Court made an order extending Sherry's hospitalization, upon the petition of NBRC. That order has apparently been appealed to the Court of Appeal, Third Appellate District. The present appeal is therefore technically moot. (See *Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1014 [234 Cal.Rptr. 724].) However, the case presents a significant question which is likely to recur, namely, what procedure should be followed for the state hospital placement of a severely developmentally disabled adult who cannot consent to admission. The importance of this question is reflected in materials filed by the parties indicating that varying and sometimes disparate practices and procedures have been adopted by affected agencies around the state. (See Schwartz & Helfer, *Do Constitutional Rights Exist If No One Is Listening? The Legacy of In re Hop* (Fall 1987) Cal. Regional Centers J., pp. 1, 3-4; Off. Legis. Analyst, Judicial Reviews of State Developmental Center Placements: Implementation of the *In re Hop Decision* (1988) pp. 10-12, 22-26 (hereinafter, Judicial Review of Placements).)

Moreover the superior court from which the present appeal arises has an apparent practice of limiting its admission orders to a duration of one year, making it likely that any such order will expire before an appeal can be

determined. Accordingly we will address the issues presented notwithstanding the suggestion of mootness.

## IV. ANALYSIS

A. *The Statutes Must Be Construed to Afford a Procedure for Admitting Sherry to a State Hospital*

In his reply brief Sherry's counsel assumes for purposes of argument that there is no available means of admitting Sherry to a state hospital. He contends that, even so, the order appealed from should be reversed. He says such a disposition would "force the regional center to find a community placement for appellant." However he impliedly concedes that reversal might have a less happy effect, saying that "[a] ruling in [Sherry's] favor will not *necessarily* result in denying her necessary services." (Italics added.)

On the record before us we must assume that Sherry's physical well-being can only be protected by admission to a state hospital. The trial court explicitly found such admission "necessary," and there was no evidence to the contrary. Counsel declines to challenge the trial court's findings, and expressly accedes to the point that Sherry is "in need of hospitalization." Accordingly, a holding that Sherry cannot be placed in a state hospital would necessarily mean, on this record, that she must be denied services necessary to her well-being and, perhaps, her survival.[3] We are unable to conclude that the Legislature intended any such consequence to flow from the governing statutes.

The Lanterman Developmental Disabilities Services Act (LDDSA) announces a legislative intention to provide necessary care for the developmentally disabled. In it, the State "accepts a responsibility for its developmentally disabled citizens and an obligation to them which it must discharge." (Welf. & Inst. Code, § 4501.) The Legislature recognizes that this requires "the coordinated services of many state departments and community agencies to insure that no gaps occur in communication or provision of services." (*Ibid.*) It declares its intent to develop a complete pattern of facilities and services "to meet the needs of each person with developmental

---

[3] Protection and Advocacy, Inc. (PAI) contends in its amicus brief that hospitalization was not necessary and that the failure of Sherry's attorneys to contest that point constituted ineffective assistance of counsel. To the extent this contention may rest on facts particular to Sherry's case, those facts are not now before us. However, PAI appears to contend that hospitalization of one in Sherry's situation can never be "necessary" because regional centers have an absolute duty to find or develop a placement in the community. We decline to consider this contention at this late stage, except to observe that it would appear to render superfluous Welfare and Institutions Code section 4825 and related statutes, as well as the Supreme Court's reasoning in *In re Hop, supra.*

disabilities, regardless of age or degree of handicap, and at each stage of life." (*Ibid.*) It further declares that developmentally disabled persons shall have rights to, among other things, treatment, humane care, prompt medical care and treatment, and freedom from harm, including neglect. (Welf. & Inst. Code, § 4502, subds. (a), (b), (d), (h).)

To hold that Sherry must be denied necessary care because of perceived gaps in the statutory procedures would contradict these avowed legislative intentions. It would also present serious constitutional problems by depriving Sherry of care afforded to several classes of similarly situated persons. Thus a person who is found to be *dangerous* because of mental retardation may receive necessary treatment under an involuntary commitment pursuant to Welfare and Institutions Code section 6500.[4] Likewise one dangerous to self or others because of a *"mental disorder"* may be placed in a treatment facility for successive six-month periods under the Lanterman-Petris-Short Act (LPSA), Welfare and Institutions Code sections 5150, 5250, 5300, and 5304. One who is *"gravely disabled"* as a result of a *"mental disorder"* may be taken into custody for three days of observation and fourteen days of intensive treatment, and may be placed in an LPSA conservatorship under which he or she may be admitted to a state hospital. (Welf. & Inst. Code, §§ 5150, 5230, 5250, 5350, 5358.)[5] A nondangerous developmentally disabled adult in need of state hospitalization may, *if represented by a parent,* be admitted on the parent's application (Welf. & Inst. Code, § 4825), provided a judicial hearing is held pursuant to *In re Hop, supra,* 29 Cal.3d 82.

To hold that the statutory scheme grants all these persons necessary care while denying it to one in Sherry's situation would raise the specter of a denial of equal protection. (See *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143, 163 [219 Cal.Rptr. 387, 707 P.2d 760].) ▮ It is a "fundamental principle" that "if reasonably possible the courts must construe a statute to avoid doubts as to its constitutionality." (*People v. Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149]; see *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 376 [204 Cal.Rptr.

[4] Apparently on the ground that dangerousness requires some threat of actively inflicted harm to self or others, the parties assume that Sherry is not "dangerous" for purposes of the LPSA or Welfare and Institutions Code section 6500. We accept this assumption as a tacit stipulation that Sherry is not "dangerous," but we express no view on the validity of that premise.

[5] As with dangerousness, the parties seem to agree that Sherry is not "gravely disabled" for purposes of an LPSA conservatorship. Welfare and Institutions Code section 5008, subdivision (h), appears to indicate that "grave disability" under the LPSA excludes disabilities attributable solely to mental retardation, as distinct from those attributable to mental disorder or chronic alcoholism. However, in view of the parties' tacit agreement on this point we do not decide it.

671, 683 P.2d 670, 41 A.L.R.4th 233].) In this case a saving interpretation is not only "reasonably possible," but plainly suggested by the statutory language.

B. *The Statutes Provide for Admission to a State Hospital Upon the Application of a Court-appointed Conservator*

Welfare and Institutions Code section 4825 provides in part that "the admission of an adult developmentally disabled person to a state hospital . . . shall be upon the application of the person's parent or conservator in accordance with the provisions of Sections 4653 and 4803."[6] Section 4653 provides in part that "no developmentally disabled person shall be admitted to a state hospital except upon the referral of the regional center."[7] Section 4803 provides that no adult shall be admitted to a community care facility or health facility as a developmentally disabled patient on the recommendation of a regional center, unless the regional center certifies that there is no objection by the admittee, a parent, or a conservator.[8]

---

[6] Welfare and Institutions Code section 4825 provides: "The provisions of this division shall not be construed to terminate any appointment of the State Department of Mental Health as guardian of the estate of a developmentally disabled person prior to July 1, 1971. [¶] It is the intent of this section that the Director of Developmental Services be appointed as guardian or conservator of a developmentally disabled person as provided pursuant to the provisions of Article 7.5 (commencing with section 416) of Chapter 2 of Part 1 of Division 1 of the Health and Safety Code. [¶] Notwithstanding the provisions of Section 6000, the admission of an adult developmentally disabled person to a state hospital or private institution shall be upon the application of the person's parent or conservator in accordance with the provisions of Sections 4653 and 4803. Any person so admitted to a state hospital may leave the state hospital at any time, if such parent or conservator gives notice of his or her desire for the departure of the developmentally disabled person to any member of the hospital staff and completes normal hospitalization departure procedures. [¶] Notwithstanding the provisions of Section 4655, any adult developmentally disabled person who is competent to do so may apply for and receive any services provided by a regional center."

[7] Welfare and Institutions Code section 4653 provides: "Except for those developmentally disabled persons judicially committed to state hospitals, no developmentally disabled person shall be admitted to a state hospital except on the referral of a regional center. Upon discharge from a state hospital, a developmentally disabled person shall be referred to an appropriate regional center."

[8] Welfare and Institutions Code section 4803 provides: "If a regional center recommends that an adult be admitted to a community care facility or health facility as a developmentally disabled resident, the employee or designee of the regional center responsible for making such recommendations shall certify in writing that neither the person recommended for admission to a community care facility or health facility nor the parent of a minor or conservator of an adult, if appropriate, has made objection to such admission to the person making such recommendation. The regional center shall transmit such certificate, or a copy thereof, to the community care facility or health facility. [¶] A community care facility or health facility shall not admit any adult as a developmentally disabled patient on recommendation of a regional center unless a copy of such certificate has been transmitted pursuant to this section . . . ."

These statutes indicate that a nonconsenting developmentally disabled adult may be admitted upon application by a parent or conservator, provided the regional center recommends admission and certifies that there is no objection. But what if there is no parent or conservator to make application? Section 4825 further provides, "It is the intent of this section that the Director of Developmental Services be appointed as guardian or conservator of a developmentally disabled person as provided pursuant to the provisions of Article 7.5 (commencing with Section 416) of Chapter 2 of Part 1 of Division 1 of the Health and Safety Code." The apparent intent of this sentence—and the interpretation which avoids leaving a gap in the statutory scheme—is that in the absence of a parent or conservator to apply for admission, the director is to be appointed for that purpose. The cited provisions of the Health and Safety Code confirm that the director may be appointed as conservator for a developmentally disabled person. (Health & Saf. Code, §§ 416, 416.9.) The appointment is to be made under the conservatorship provisions of the Probate Code. (Health & Saf. Code, § 416.1.) Upon appointment, the services to be rendered by the director as conservator "shall be performed through the regional centers or by other agencies or individuals designated by the regional centers." (Health & Saf. Code, § 416.19.)

 The statutes thus contemplate that a developmentally disabled adult may be admitted to a state hospital on the application of a parent or conservator, combined with a referral from a regional center and a certificate of nonobjection. If no parent or conservator is available for this purpose, the Director of Developmental Services may be appointed conservator in a conservatorship proceeding under the Probate Code. The director's duties as conservator may (or "shall") be delegated to the regional center. Once these requirements have been satisfied a regional center may, as the director's delegate, apply to a state hospital for admission of the developmentally disabled conservatee. Here there was no attempt to comply with the conservatorship requirement; therefore the procedure followed appears to have been flawed.[9]

## C. *The Statutory Procedure Has Not Been Shown to Be so Inadequate as to Require a Judicially Fashioned Remedy*

Both parties assert that the existence or adequacy of a conservatorship remedy is "beyond the scope of this appeal." We disagree. The question before us is whether the trial court was empowered to adopt a procedure

---

[9] We do not determine whether or in what sense the error was "jurisdictional." (See *Guardianship of Smith* (1980) 100 Cal.App.3d 882, 892 [161 Cal.Rptr. 335]; but see 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, §§ 74, 76, pp. 443-444, 444-446 [defects of parties and noncompliance with statutory procedures generally not "jurisdictional" in proper sense].)

not provided by statute, namely, a petition for judicial admission brought by NBRC in its own right. The availability of such an extra-statutory remedy depends in significant part on the existence and adequacy of any remedy or remedies provided by the Legislature. ■ "A statutory remedy for a statutory right is considered exclusive where the Legislature so intended [citations], but such intent will not be found where the remedy is patently inadequate." (*B & P Development Corp.* v. *City of Saratoga* (1986) 185 Cal.App.3d 949, 961 [230 Cal.Rptr. 192].) Here section 4825 provides that admission to a state hospital "shall be upon the application of the person's parent or conservator," and implies that in the absence of one or the other of these the director shall be appointed conservator for that purpose. This at least *implies* an intended exclusivity of remedy. Therefore if the remedy is adequate it should be followed. Nothing before us shows that the remedy was inadequate.

■ Sherry's attorney points to Probate Code section 2356, which provides in part that "[n]o ward or conservatee shall be placed in a mental health treatment facility under this division against the will of the ward or conservatee."[10] Counsel interprets this statute to mean that a conservator under the Probate Code is prohibited from seeking to place a developmentally disabled conservatee in a state hospital. However, the above-cited provisions of the Welfare and Institutions Code and Health and Safety Code expressly contemplate the state hospitalization of a developmentally disabled person upon application by a conservator appointed pursuant to the Probate Code procedures. Where multiple statutes deal with the same subject they should, if possible, be construed in a manner which harmonizes and gives effect to all of them. (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32]; *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749].) Here the statutes are in harmony if "mental health treatment" is understood to refer to treatment for mental disorders rather than care for developmental disabilities. Such a distinction is suggested by other authorities. (See Welf. & Inst. Code, § 5601 ["mental health service" as "service directed toward . . . mental disorder"]; *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 282, 285, fns. 5-12 [139 Cal.Rptr. 357] ["mental disorder" limited to those listed by American Psychiatric Association; schizophrenia as most common mental disorder]; com-

---

[10] Probate Code section 2356, subdivision (a), provides: "No ward or conservatee shall be placed in a mental health treatment facility under this division against the will of the ward or conservatee. Involuntary civil mental health treatment for a ward or conservatee shall be obtained only pursuant to Chapter 2 (commencing with Section 5150) or Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code. Nothing in this subdivision precludes the placing of a ward in a state hospital under Section 6000 of the Welfare and Institutions Code upon application of the guardian as provided in that section. The Director of Mental Health shall adopt and issue regulations defining 'mental health treatment facility' for the purposes of this subdivision."

pare Welf. & Inst. Code, § 4512 ["developmental disability" as mental retardation or similar handicapping condition].) The statutes may also be harmonized by interpreting the phrase "under this division" to mean that section 2356 limits the powers granted in the Probate Code, but not those granted in other codes.

Moreover, if the statutes could not otherwise be reconciled, the prohibition in Probate Code section 2356 would have to give way to the grants of power in the Welfare and Institutions Code. "Where a general statute standing alone would include the same matter and conflict with a special statute, the special act will be considered as an exception to the general, whether it was passed before or after the general enactment." (*Yoffie* v. *Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 748 [238 Cal.Rptr. 502].) Here the Probate Code section generally withholds certain powers from a conservator, while the Welfare and Institutions Code sections specifically grant such powers with respect to specified conservatees under specified conditions. We must conclude that these specific grants are effective notwithstanding the general prohibition.

The conservatorship procedure is challenged on the further ground that it does not satisfy, and would conflict with, the due process requirements laid down in *In re Hop, supra,* 29 Cal.3d 82. (See Comment, *Hop Revisited: The Probate Conservatorship and State Hospitalization of the Developmentally Disabled Adult* (1986) 13 Western St. U. L. Rev. 581, 589-591.) The holding in *Hop* was that where a developmentally disabled adult is deemed incapable of consenting to admission to a state hospital, he or she cannot be admitted, without a hearing, solely on the application of a parent.[11] We agree that the Probate Code procedures for appointing a conservator do not satisfy the requirements of *Hop,* but this does not dispense with the conservatorship requirement. The conservatorship proceeding is intended to authorize someone to *apply* for state hospital admission on behalf of the developmentally disabled person. The constitutional rationale of *Hop* is not, and need not be, satisfied by that procedure. *Hop* mandates a judicial hearing and determination *in addition to* the application for admission.

The contrary conclusion in the last-cited law review comment flows from the premise that, unlike a parent, a court-appointed conservator is "legally

---

[11] Contrary to the position taken by NBRC and reportedly adopted in some counties, *In re Hop* does not furnish authority for hospitalizations not otherwise authorized by statute. The court in *Hop* was concerned only with the constitutionality of the statutory procedure (which had been followed in that case) whereby an adult could be hospitalized upon the concurrence of a parent and regional center, without an effective consent or waiver by the admittee. By imposing the additional requirement of a judicial hearing, the court was delimiting existing procedures, not expanding them.

authorized" to place a conservatee in a state hospital without court approval. (13 Western St. U. L. Rev., *supra,* at p. 589.) The author supplies neither authority nor reasoning to support this assertion, but merely attributes it to some unidentified "parents and attorneys." (*Ibid.*) The rationale of *Hop* is that a developmentally disabled adult who is putatively unable to consent to the deprivation of liberty entailed in state hospitalization cannot be so deprived without a hearing. For purposes of this rationale, we see no reason to distinguish between hospitalizations initiated by parents and those initiated by conservators.

■ The next alleged infirmity in the statutory procedure is that a probate conservatorship may last indefinitely (Prob. Code, § 1860), and an indefinite commitment may be unconstitutional (see *Jackson* v. *Indiana* (1972) 406 U.S. 715, 731 [32 L.Ed.2d 435, 447, 92 S.Ct. 1845]; *O'Brien* v. *Superior Court* (1976) 61 Cal.App.3d 62, 66-67 [132 Cal.Rptr. 13]; *In re Davis* (1973) 8 Cal.3d 798, 804 [106 Cal.Rptr. 178, 505 P.2d 1018]; *People* v. *Feagley* (1975) 14 Cal.3d 338, 376 [121 Cal.Rptr. 509, 535 P.2d 373]). But a conservatorship is not a commitment, and the fact that it may last indefinitely does not mean the hospitalization must last indefinitely. The trial court here limited its order authorizing hospitalization to one year's duration. The objection therefore does not arise on this record.

Counsel for NBRC next notes that the proposed conservatorship would result in virtually the same procedure as was followed here. He points out that if the director had been Sherry's conservator, NBRC would have become, as he puts it, the "delegated conservator" under Health and Safety Code section 416.19. Presumably NBRC would have then filed a petition for a court order, as required by *Hop,* authorizing Sherry's admission to the state hospital. This, of course, is exactly what NBRC did here. The only difference is that NBRC would have been acting as the director-conservator's delegate, rather than in its own right.

These hypotheses may be accurate as far as they go. In the absence of some constitutional infirmity or demonstrated inadequacy of remedy, however, it is not for us to dispense with the prescribed statutory procedure simply because it may appear circuitous or because compliance may seem like "form over substance." Rather our duty is to apply the statutory scheme unless or until the Legislature sees fit to change it.[12]

---

[12] Legislation proposed in the last term would have amended Welfare and Institutions Code sections 6500 et seq. to provide that the district attorney or county counsel may petition for the unconsented-to admission to a state hospital of a person alleged to be "gravely disabled" because of developmental disability. (Assem. Bill No. 4532 (1987-1988 Reg. Sess.), as amended June 22, 1988.) We fail to divine any legal relevance in this proposed but unenacted legislation.

In any event, it does not appear to us that compliance with conservatorship procedures would have been pointless. There is no indication that any attempt was made here to notify Sherry's family of the petition under review or of the preceding petition under Welfare and Institutions Code section 6500. Had conservatorship proceedings been brought, her parents and other immediate relatives would have been entitled to be named in and served with any petition for appointment of a conservator. (Prob. Code, §§ 1821, subd. (b); 1822, subd. (b)(2).) Here, for all the record shows, the family's potential interest was wholly disregarded. We do not believe this disregard was warranted by testimony (to which the family had no opportunity to respond) that the family had not visited Sherry in several years and "rarely" called to check on her. They were entitled to notice of a conservatorship proceeding. The failure to give them such notice was more than a defect of form.

We also reject the suggestion that the Legislature did not trust regional centers to decide whether their clients should be hospitalized. That assertion is based on nothing the Legislature has said or done, but on language in *Hop* concerning "subtle pressure" which might cause the regional center to favor state hospitalization over community care. (See 29 Cal.3d at p. 92.) The *Hop* court was not discussing legislative intent; it was concerned with the *constitutional* infirmities in permitting a regional center to confine a person without a hearing on the basis of the center's conclusion that the admittee did not oppose the confinement. Here this analysis only reinforces our conclusion that a *Hop* hearing is required in addition to compliance with statutory procedures.

Several amici curiae assert that the conservatorship remedy is inadequate because the director may decline to be appointed, relying on *Guardianship of Smith* (1980) 100 Cal.App.3d 882, 892 [161 Cal.Rptr. 335]. The department requests that we "clarify" this subject by declaring that the director may indeed refuse appointment. However, this case presents neither the occasion nor the concrete factual background necessary to resolve such issues. There is no competent evidence that the director has refused or will refuse appointment when it is sought under Welfare and Institutions Code section 4825. We need not and should not consider the extent of the director's power to do so unless or until the director exercises it, or at least manifests an intent to exercise it. Concededly, such an occurrence may have the effect of rendering the statutory remedy inadequate. Until these issues are presented on a fully developed record, however, we shall not attempt to resolve them.

Similarly, we cannot address on this appeal the contentions by various amici curiae that the proceeding contemplated here will generate severe

practical difficulties in the nature of delay, excessive cost, and so on. The record before us does not permit an assessment of these supposed obstacles and we cannot conclude merely on the basis of counsel's assertions that they will render the statutory remedy inadequate. There is some indication to the contrary; it appears from a legislatively mandated study that at least one county is already following a procedure like that contemplated here. (Judicial Review of Placements, *supra,* pp. 11, 24.) In any event, we emphasize that our decision rests on the premise that the statutory remedy is adequate. We are required to accept this premise for present purposes because the present record contains no competent basis for a contrary conclusion. Should experience or competent evidence demonstrate otherwise, the trial court may fashion appropriate remedies tailored to the vindication of the rights in question.

Finally we note the assertion that a Probate Code conservatorship would be unavailing because "the record is clear that the State Hospital will not accept Appellant on a probate conservatorship." The sole record support for this assertion is an unsworn statement by Sherry's trial attorney that "[t]he Stockton State Hospital will not take her on a probate conservatorship." No source for this information is cited and no explanation is given. The statement probably means that the hospital refuses to admit Sherry, *without a court order,* merely on the request of a conservator. Such a refusal would be fully justified by our reading of *In re Hop, supra,* 29 Cal.3d 82. In any event, the hospital may if necessary be made a party to the *Hop* hearing, and in fashioning an order the trial court may take the hospital's objections, if any, into account.

## V. Disposition

We conclude that the order appealed from is flawed for failure to comply with the prescribed procedure for admission to a state hospital of a nondangerous, nonobjecting, developmentally disabled adult. On remand this procedure must be followed or a record must be developed demonstrating that the procedure is inadequate. In the meantime it is not necessary that Sherry be immediately released from the state hospital. (See *In re Hop, supra,* 29 Cal.3d at p. 94.)

Anderson, P. J., and Poché, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 26, 1989.