[No. B036972. Second Dist., Div. Six. Aug. 15, 1989.]

In re VIOLET C. on Habeas Corpus.

COUNSEL

Dennis A. Fischer and Alan S. Yockelson for Appellant.

Kenneth I. Clayman, Public Defender, and Neil B. Quinn, Deputy Public Defender, for Respondent.

OPINION

STONE (S. J.), P. J.—Here we are asked to resolve whether the California Supreme Court case of *In re Hop* (1981) 29 Cal.3d 82 [171 Cal.Rptr. 721, 623 P.2d 282] should be broadly construed to provide an alternative and nonstatutory vehicle for judicially committing a developmentally disabled adult to a state hospital. We hold it should not and affirm the order of the Ventura County Superior Court granting Violet C.'s writ of habeas corpus.

FACTS

At the time pertinent to this appeal, Violet C. was a 31-year-old, mildly retarded woman who suffered from uncontrolled seizure disorders with intermittent explosive episodes. She repeatedly ran away from her family residence and care facilities, and endangered herself through the use of drugs and alcohol. She lived a transient lifestyle among people who abused her physically and sexually. She had lived with her family since her release from Lanterman State Hospital at age 18 until her recent placement in Camarillo State Hospital. After her mother died, her siblings requested her removal from the family home because they felt they could not control her behavior. She became angry with her nieces frequently, and when her

family attempted to prevent her running away, she threatened them with a knife, baseball bat, or shotgun. She was well known to the police as a runaway and all attempts at placing her in residential care facilities and behavioral management programs failed.

In July 1988, the Los Angeles County Developmental Services Foundation, Inc., doing business as the Frank D. Lanterman Regional Center (regional center), filed a petition for Violet C.'s involuntary placement in a state mental hospital (euphemistically called "developmental center") using as authority for the petition the case of *In re Hop, supra,* 29 Cal.3d 82. At the hearing on the petition July 27, 1988, counsel for Violet C. informed the court that Violet C. objected to a state hospital commitment. Her counsel questioned the applicability of *In re Hop,* and requested a jury trial. The Los Angeles County Superior Court ordered, at the regional center's request, that Violet C. be detained in Camarillo State Hospital in Ventura County, over her objection, pending trial.[1]

Violet C. requested her release from Camarillo State Hospital by writ of habeas corpus pursuant to Welfare and Institutions Code section 4800.[2] The Ventura County Superior Court heard the matter August 19, 1988. The public defender, representing Violet C., stressed that she did in fact object to hospitalization and that the Los Angeles County Superior Court's order, directing that she not be released even if she objected, was illegal and void. The judge pro tem noted that section 4801 clearly directs that judicial review of such requests for relief shall be in the superior court for the county in which the state hospital is located and that *In re Hop, supra,* 29 Cal.3d 82, provided no authorization for involuntary judicial commitment of a developmentally disabled person absent a court's acting upon a petition for a conservatorship pursuant to section 5358 of the Lanterman-Petris-Short Act or a section 6500 petition alleging that the person is mentally retarded and a danger to herself or others.

The Ventura County Superior Court granted the writ of habeas corpus stating that she was improperly committed. This court denied the regional center's petition to stay enforcement of the Ventura County Superior Court's order pending appeal.

---

[1] We granted the regional center's request to judicially notice certain records filed with this court in its request for stay of execution, in particular appendixes 1 and 2.

[2] All statutory references hereinafter are to the Welfare and Institutions Code unless otherwise specified.

DISCUSSION

### 1. *Mootness*

The parties inform us that the Los Angeles District Attorney subsequently filed a petition under section 6500 and obtained a temporary order for her commitment pending trial on that petition. (§ 6506.) They assert, however, that the issue here presented is of considerable importance, will undoubtedly recur, yet evade appellate review, and should not be dismissed as moot. (*Money* v. *Krall* (1982) 128 Cal.App.3d 378, 392 [180 Cal.Rptr. 376].) We find these issues to be of continuing public interest and we therefore elect to discuss and determine the merits of this appeal.

### 2. *The Statutory Scheme*

The regional center focuses its arguments upon whether a court may hear a *Hop* petition and order temporary placement of the admittee where the developmentally disabled adult objects to a state hospital commitment. The issue, however, is broader and encompasses the question whether a statutory procedure exists to commit to a state hospital a nonviolent or nonassaultive developmentally disabled adult who is unable to care for herself, a question discussed recently in *North Bay Regional Center* v. *Sherry S.* (1989) 207 Cal.App.3d 449 [256 Cal.Rptr. 129]. For the answer we must first look to the present statutory scheme and then to the cases interpreting it.

The Lanterman-Petris-Short Act (L.P.S.) (§ 5000 et seq.) was enacted, inter alia, "To end the inappropriate, indefinite, and involuntary commitment of mentally disordered persons, developmentally disabled persons, and persons impaired by chronic alcoholism, and to eliminate legal disabilities; . . ." (§ 5001, subd. (a).) A person is "gravely disabled" if, because of *mental disorder or chronic alcoholism,* he or she is unable to provide for basic personal needs for food, clothing, or shelter. Mentally retarded persons are not considered "gravely disabled" by reason of being mentally retarded alone. (§ 5008, subd. (h)(1)-(2).)

"Judicially committed," as pertinent here, is defined as "Developmentally disabled persons who are admitted to a state hospital upon application or who are committed to the State Department of Developmental Services by court order pursuant to Article 2 (commencing with Section 6500) of Chapter 2 of Part 2 of Division 6." (§ 5008.1, subd. (b).) A person who is a danger to herself or gravely disabled due to mental disorder or chronic alcoholism may be involuntarily detained in an appropriate care facility for 72 hours, and then held for longer periods as necessary after appropriate

judicial hearings and evaluations. (§ 5150 et seq.) These commitments are for specific periods of time. (See, e.g., § 5257.)

A conservator of the person, of the estate, or of both the person and the estate, may be appointed for any person gravely disabled as a result of mental disorder or chronic alcoholism. (§ 5350.) The purpose of such a conservatorship is to provide "individualized treatment, supervision, and placement." (§ 5350.1.) A conservator appointed pursuant to these provisions (an L.P.S. conservator) has the power to require the person to be detained in a facility for intensive treatment. (§ 5353.) However, "When ordered by the court after the hearing required by this section, a conservator appointed pursuant to this chapter shall place his or her conservatee in the least restrictive alternative placement, as designated by the court. . . ." (§ 5358, subd. (a).) The conservatorship shall automatically terminate one year after appointment subject to extension by petition for reappointment and a finding that the conservatee is still gravely disabled. (§ 5361.)

A mentally disordered or developmentally disabled person may voluntarily enter a state hospital. "In the case of an adult person, the application shall be made voluntarily by the person, at a time when he is in such condition of mind as to render him competent to make it or, if he is a conservatee with a conservator of the person or person and estate who was appointed under Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 with the right as specified by court order under Section 5358 to place his conservatee in a state hospital, by his conservator." (§ 6000, subd. (a).) Additionally, pursuant to section 6000, a medical director of a state hospital for the developmentally disabled may receive as a patient or boarder a developmentally disabled person "as defined in Section 4512 who has been referred in accordance with Sections 4652, 4653, and 4803." (§ 6000.5.)

Section 4512 defines "developmental disability" as one which originates "before an individual attains age 18, continues, or can be expected to continue, indefinitely, and constitutes a substantial handicap for such individual. . . . [T]his term shall include mental retardation, cerebral palsy, epilepsy, and autism. . . ." Sections 4652 and 4653 provide that each regional center must investigate every appropriate and economically feasible alternative care available within the region and, except for those developmentally disabled judicially committed, a state hospital shall not admit a developmentally disabled adult except upon the referral of a regional center.

Section 4803 states that if a regional center recommends placement in a community care or health facility, it shall certify in writing that neither the person recommended for placement nor the parent of a minor or conserva-

tor of an adult, if appropriate, has made objection to such admission to the person making such recommendation. This written certification of nonobjection is a prerequisite to admission.

Section 4825 provides, in pertinent part: "Notwithstanding the provisions of Section 6000, the admission of an adult developmentally disabled person to a state hospital or private institution shall be upon the application of the person's parent or conservator in accordance with the provisions of Sections 4653 and 4803. Any person so admitted to a state hospital may leave the state hospital at any time, if such parent or conservator gives notice of his or her desire for the departure of the developmentally disabled person to any member of the hospital staff and completes normal hospitalization departure procedures."

■ Construed together sections 4803 and 4825 indicate that placement under section 4825 is to be accomplished through the legal representative of an admittee not competent to request his or her own admission under section 6000, i.e., through either the parent of a minor or the conservator of an adult. Section 4825 also provides that it is the intent of this section that the Director of Developmental Services be appointed as guardian or conservator of a developmentally disabled person as provided by Health and Safety Code section 416 et seq.

The only provision for *judicial* commitment of a mentally retarded person to the State Department of Developmental Services is section 6500: "On and after July 1, 1971, no mentally retarded person may be committed . . . pursuant to this article, unless he is a danger to himself or others." This section, along with the development of legislation regarding treatment of the mentally ill, reflects increased legislative sensitivity to constitutional limitations on involuntary civil commitment. (*In re Krall* (1984) 151 Cal.App.3d 792, 795 [199 Cal.Rptr. 91].) ■ Dangerousness to self and others is considered to include, but is not limited to, a finding of incompetence to stand trial when the person has been criminally charged with violent or assaultive crimes or if the person has been charged with a felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person. Under section 6500, any order of commitment expires automatically after one year.

The two cases which bear most upon this issue are *In re Hop, supra,* 29 Cal.3d 82 and *North Bay Regional Center* v. *Sherry S., supra,* 207 Cal.App.3d 449. We review the *Hop* decision from both the standpoint of what it said, and more importantly, what it did not say. *Hop* considered a scheme under which nonobjecting mentally retarded persons incompetent to request hospital placement could "voluntarily" be so placed at the

request of a person other than a duly authorized conservator or guardian. No judicial determination of disability or need for such placement was required. Irene Hop was placed in a state hospital by her mother with the concurrence of the regional center and hospital staff pursuant to section 4825. (29 Cal.3d 82, 87.) The Public Defender of San Bernardino County filed a petition for habeas corpus on her behalf alleging that she had neither guardian of her person or estate nor conservator, and that she was moved to a more confining facility, lacked the ability to object to her transfer, and had been unable to obtain any judicial review of the propriety of her initial transfer and confinement to the state hospital. (*Id.,* at p. 86.)

 The California Supreme Court reasserted the requirement that criminal due process standards be applied to commitment to a state hospital of one mentally ill. (*In re Hop, supra,* 29 Cal.3d 82, 89.) The court then examined "with a critical eye that feature of the statutory scheme which permits admission of the developmentally disabled to state hospitals without judicial hearing when no objection has been made by the ward." (*Ibid.*) The court disapproved the procedure, noting a contradiction inherent in the scheme, i.e., the analytical difficulty in presuming someone competent to understand the need to object to one's own placement in an institution by a third party while at the same time presuming that the admittee is incompetent to request admission or obtain his or her own release. (*Id.,* at p. 90.) The court held that a lack of objection before or after admission cannot be construed as a waiver of constitutional rights and "[t]he failure to object to a commitment by a third party who is neither conservator nor legal representative is no waiver." (*Id.,* at p. 91.)

The court held that "a developmentally disabled adult placed in a state hospital at the request of one not so legally authorized (see, e.g., § 5358) may not be deemed a 'voluntary' admittee because he or she neither requested nor knowingly agreed to the placement." (29 Cal.3d at p. 92.) The court noted that no other class of adults similarly situated and in need of protective custody may be placed lawfully in a state hospital without a knowing and intelligent waiver of rights, or a request, or a judicial determination that placement is appropriate. (*Ibid.*) The court concluded that Irene Hop's placement in the hospital at her mother's request, absent either a judicial determination regarding her disability or a knowing and intelligent request for admission, was unconstitutional.

 The court stated, "She is entitled to a judicial hearing on the question of whether, because of developmental disability she is gravely disabled or a danger to herself or others and whether placement in a state hospital is warranted. We analogize her situation to that of proposed conservatees under the Lanterman-Petris-Short Act. As such she is entitled to

the same congeries of rights including the right to a jury trial on demand [citations] and to the application of the standard of proof beyond a reasonable doubt. . . ." (29 Cal.3d at p. 93.)

■ Some counties have interpreted this explanation as an alternative method of judicially committing a nonviolent developmentally disabled person to a state hospital. The regional center explains that in some counties a nonviolent developmentally disabled adult who is unable to care for him or herself is not considered a proper subject for a section 6500 petition because of lack of assaultive behavior and is not considered "gravely disabled" because the disability does not stem from mental disorder or chronic alcoholism. Consequently, the governmental agency responsible for filing section 6500 petitions has placed the burden on regional centers to file a petition under *In re Hop, supra,* 29 Cal.3d 82, alleging that due to mental retardation or developmental disability the adult is gravely disabled and in need of a state hospital commitment.[3]

The regional center reads *Hop, supra,* 29 Cal.3d 82, broadly to authorize this nonstatutory procedure for judicial commitment, and asserts that counties such as Los Angeles consider objection or lack thereof to a hospital commitment irrelevant so long as the admittee is entitled to a hearing. On the other hand, counties such as Ventura consider that the so-called *Hop* petition applies only where there is no objection to placement and will grant a habeas petition of anyone who objects to placement through a *Hop* petition.

The regional center argues that "the breadth of the judicial inquiry suggested by the *Hop* court and the full panoply of constitutional rights afforded individuals in those proceedings provide an *analogous* method of judicial commitment to fill a gap in the statutory scheme." We disagree. We do not believe the Supreme Court in *Hop* intended to create a new nonstatutory involuntary judicial commitment. "[A]ll that *Hop* held was that a developmentally disabled person initially committed by her mother under section 4825 is entitled to a judicial hearing to test the basis for the commitment." (*Cramer* v. *Gillermina R.* (1981) 125 Cal.App.3d 380, 393 [178 Cal.Rptr. 69].) *Hop* does not furnish authority for hospitalization not otherwise authorized by statute. (*North Bay Regional Center* v. *Sherry S., supra,* 207 Cal.App.3d 449, 460, fn. 11.)

*Hop* only applied constitutional safeguards to an otherwise constitutionally infirm statutory scheme which allowed a developmentally disabled

---

[3] Although we are not called upon here to decide the breadth of the definition of "dangerousness" for purposes of section 6500, it would appear that a person whose developmental disability causes her to be prone to place herself in life-threatening situations is a danger to herself.

adult who might be legally incompetent to object to voluntary placement to be committed indefinitely to a state hospital. According to *Hop,* one who is admitted to the hospital under a supposedly voluntary commitment for an indefinite period must be afforded the same constitutional safeguards as one who is alleged to be gravely disabled under L.P.S. or one alleged to be a danger to herself or others under section 6500.

The weakness in section 4825 pointed out by *Hop* was that: (1) there was no predeprivation hearing; (2) that section did not require that the person in fact need hospitalization; and (3) the hospitalization was for an indefinite period of time. (Comment, *Hop Revisited: The Probate Conservatorship and State Hospitalization of the Developmentally Disabled Adult* (1986) 13 Western St.U. L.Rev. 581.) Thus, whether one who is legally incompetent to decide her own fate expressly objects to or acquiesces in the proposed commitment is not determinative. The pertinent questions are: (1) whether the person applying for the developmentally disabled adult's commitment to a facility is authorized legally to do so; (2) whether the proposed admittee, because of a developmental disability, is unable to care for herself or is a danger to herself or others; and (3) whether placement in a state hospital is warranted.

In *North Bay, supra,* 207 Cal.App.3d 449, the reviewing court discussed the proper procedure for admitting to a state hospital a severely developmentally disabled but nondangerous adult who is not represented by a parent, guardian, or conservator. The court held that there was no gap in the statutory scheme because the governing statutes contemplate the appointment of the Director of Developmental Services as the client's conservator if there was no parent or conservator available for this purpose. (207 Cal.App.3d 449, 452.) The director's duties may be delegated to the regional center and once these requirements have been met, the regional center, as the director's delegate, may apply to a state hospital for admission of the developmentally disabled conservatee under section 4825. (*Id.,* at p. 458.)

Appointment of the director as conservator does not per se constitute a judicial finding that the developmentally disabled adult is legally incompetent. (Health & Saf. Code, § 416.9.) However, the petition for appointment may include a request for that determination or an adjudication may be made subsequently upon a duly noticed petition heard in the same manner as the petition for conservatorship. (*Ibid.*)

The regional center in *North Bay,* as did the regional center here, challenged the adequacy of the conservatorship procedure. The court rejected the challenge, noting that both the Welfare and Institutions Code and the Health and Safety Code "expressly contemplate the state hospitalization of

a developmentally disabled person upon application by a conservator appointed pursuant to the Probate Code procedures." (207 Cal.App.3d at p. 459.)[4] Additionally, under settled rules of statutory interpretation, the specific grants of power in the Welfare and Institutions Code would prevail over the more general provisions in the Probate Code to which Health and Safety Code section 416 et seq. refer. (*Id.*, at p. 460.) The court noted, however, that there appears no reason to distinguish between hospitalization initiated by parents and those initiated by a Probate Code conservatorship. While the conservatorship proceeding would authorize someone to *apply* for state hospital admission on behalf of the developmentally disabled person, *Hop* mandates a judicial hearing and determination *in addition to* the application for admission pursuant to section 4825. (*Id.*, at pp. 461-462.)[5]

The regional center in the instant case asserts that a conservatorship would be procedurally inadequate since the Department of Developmental Services deems such placement "voluntary" for licensing purposes and in its discretionary power will not admit such persons for hospital placement. It seems that at the *Hop* hearing following a proper section 4825 request for admission the record could be more fully developed to substantiate the basis of this claim. If the trial court found that there was a valid basis for such an exercise of discretion by the Department of Developmental Services, it might fashion an appropriate order for placement. In any case, on the basis of the record before us, we are unwilling to find that this possibility causes the statutory scheme to be inadequate or to create a gap in the statutorily authorized services. (See *North Bay Regional Center* v. *Sherry S., supra,* 207 Cal.App.3d 449, 463.)

Consequently, we find that the Ventura County Superior Court did not improvidently grant Violet C.'s request for release. There is nothing in the record to indicate the *Hop* petition was brought by one legally authorized to seek her commitment in a state hospital. Furthermore, since section 4825 implies an intended exclusivity of remedy for a nonviolent and legally incompetent developmentally disabled adult's commitment to a state hospital (*North Bay Regional Center* v. *Sherry S., supra,* 207 Cal.App.3d 449, 459),

---

[4] The reviewing court in *North Bay* also states that "a [nonconsenting] developmentally disabled adult may be admitted to a state hospital on the application of a parent or conservator, combined with a referral from a regional center and a certificate of nonobjection." (207 Cal.App.3d 449, 458.) Although this language is based upon section 4825, this section should be read with section 4803, as we stated *ante,* which grants powers of objection to placement to "the parent of a minor or conservator of an adult . . . ." A parent's legal authority over a child terminates at age 18. (Civ. Code § 204.) Requiring a parent to seek appointment as conservator of an adult developmentally disabled child ensures greater scrutiny of the request for hospital placement and offers the proposed admittee greater procedural protection.

[5] An L.P.S. conservator, in contrast, has the power to place the ward in an appropriate care facility.

the procedure used to commit her to a state hospital was improper and her temporary placement at Camarillo State Hospital was illegal.

The order appealed from is affirmed.

Gilbert, J., and Abbe, J., concurred.